**The STATE of Texas, Appellant,**

v.

**SUNGROWTH VI, CALIFORNIA LTD.,**
**et al., Appellees.**

No. 14484.

Court of Appeals of Texas,
Austin.

June 25, 1986.

Rehearing Denied July 16, 1986.

Jim Mattox, Atty. Gen., Michael E. Stork, Asst. Atty. Gen., Austin, for appellant.

John N. McClish, Womack & McClish, P.C., Austin, for appellees.

Before POWERS, EARL W. SMITH and BRADY, JJ.

POWERS, Justice.

The State of Texas appeals from a trial-court judgment awarding appellees[1] damages in an eminent-domain proceeding initiated by the State through the State Highway and Public Transportation Commission. We will reform the judgment to delete therefrom a sum awarded appellees as compensation for lost profits attributable to highway construction adjacent to appellees' property. As reformed, we will affirm the judgment.

1. Sungrowth VI, California, Ltd.; Midland Mutual Life Insurance, Co.; Tynes Realty—Cliff

Appellees own and operate the "Walnut Grove Apartments" on a tract of land adjacent to Highway 290 in the City of Austin, Travis County, Texas. The State determined to widen the highway right-of-way adjacent to appellees' land. Accordingly, the State initiated the statutory proceedings in eminent domain, declaring its need for a strip of appellees' land approximately 336′ long and 23′ wide and requesting that the special commissioners assess the statutory damages to which appellees were entitled. Tex.Prop.Code Ann. §§ 21.001–.065 (1984 & Supp.1986). The strip to be acquired by the State amounted to 7,645.73 square feet, leaving in appellees a remainder of 102,617.62 square feet. All the apartment buildings were situated on the remainder, although the strip taken approaches to within one foot of some buildings. The State and appellees both appealed from the award of the special commissioners and the case was tried in a county court-at-law with the assistance of a jury.

In answer to special issues, the jury gave its verdict as follows:

### Special Issue No. 1

Do you find, by a preponderance of the evidence, that agents or employees of the state negotiated in good faith to purchase the rights it seeks to take prior to the filing of this suit? Answer ...: We do not.

### Special Issue No. 2.

What do you find ... was the fair market value of the [appellees'] 7,645.73 square foot parcel of land which was taken on October 2, 1984? Answer ...: $35,000.00.

### Special Issue No. 3.

What do you find ... was the fair market value of the [appellees'] remaining 102,617.62 square foot tract of land and improvements immediately prior to the taking on October 2, 1984? Answer ...: $1,670,000.00.

Creek Apartments, Ltd.; Serin U.S. Holdings, Ltd.; and Saenz and Sporrer.

Special Issue No. 4.

What do you find ... was the fair market value of the [appellees'] remaining 102,617.62 square foot tract of land and improvements immediately after the taking on October 2, 1984, considering all uses to which the part taken is to be put? Answer ...: $1,300,000.00.

Special Issue No. 5.

During the construction of the new highway lanes, what do you find ... to be the business profits which will, in reasonable likelihood, be lost by the [appellees] caused by the construction activities? Answer ...: $98,355.00.

In connection with Special Issue No. 5, the jury were instructed that they "may not include in response to Special Issue No. 5 any permanent decrease in value which you have already found in response to Special Issue No. 4."

The trial court judgment rests on the verdict and awards appellees the total sum of $503,355.00, representing the aggregate of the sums found by the jury as the fair market value of the strip taken, the diminution in the fair market value of the remainder, and the profits likely to be lost by appellees by reason of "the construction activities." From this judgment, the State appeals by assigning various points of error.

The State attacks initially the trial court's award of lost "business profits" attributable to the anticipated construction work adjacent to the apartments, when under the evidence the work would not interfere with access to appellees' property. It is beyond dispute that the award of lost "business profits" was made in the present case as an independent award of damages in addition to the sum awarded as the fair market value of the land taken and the sum awarded for the diminution in market value of the remainder.

▮ We believe it settled that a landowner may not recover lost business profits, *as such,* in an eminent-domain proceeding under Tex.Prop.Code Ann., *supra,*

§§ 21.001–.065. *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 197–98 (1936); *Milam County v. Akers,* 181 S.W.2d 719, 722 (Tex.Civ.App.1944, writ ref'd w.o.m.); *City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176, 179 (1951); Rayburn, *Texas Law of Condemnation* §§ 104, 105, 366–69 (1960). *Evidence* of lost profits may be admitted as bearing upon the value of the land taken or the diminution in value of the remainder, or as substantiating opinion evidence of those values. *See* Rayburn, *supra;* 4 Nichols, *The Law of Eminent Domain* § 13.3(2), pp. 13–212 to 13 (1985). In a suit for inverse condemnation, the landowner may recover lost business profits occasioned by "a material and substantial interference with access to" his property, shown in one of the three ways specified in *City of Austin v. Avenue Corporation,* 704 S.W.2d 11, 13 (Tex.1986). Should he not then be entitled to recover lost profits, *as such,* in addition to and independent of the value of the land taken and the diminution in value of the remainder, when part of his property is taken in a statutory proceeding in eminent domain coupled with "a material and substantial interference with access to" the remainder and the business conducted thereon? Arguably so, but the theory is inapplicable to the present case where there is no finding of *any* interference whatever with access to appellees' property by reason of the taking or the construction work to be done adjacent to appellees' property. We find no other possible theory for an exception to the well-established rule mentioned at the beginning of this paragraph. We therefore hold the judgment erroneous in its award of $98,355.00 in lost profits as a sum independent of and in addition to the sums awarded for the fair market value of the strip taken and the diminution in fair market value of the remainder.

▮ The State also complains that the trial court erred because part of its judgment was based on the opinion testimony of John McNabb. McNabb testified that the apartment complex, after the taking, would no longer comply with zoning-set-

back requirements and this would have a major effect on the value of the remainder. The State contends the evidence shows the complex is *presently* a non-conforming use because one of Sungrowth's exhibits indicates that one of the buildings is presently closer to the existing right of way than allowed by law. From this, the State argues that McNabb's calculation of the reduction in the value of the remainder is faulty, since he assumed the complex was presently in compliance with the City's setback requirements. We disagree that this was reversible error because one may not infer from the evidence *whether or not* the building was in compliance with the City's regulations.

The zoning regulations of the City of Austin provide:

> A noncomplying structure may be continued and may be enlarged, maintained, repaired or altered....

Austin, Tex., Code Chpt. 13–2A § 5845 (eff. January 1, 1985).[2] In addition, the regulations provide that a noncomplying structure may be restored after damage or destruction, may be repaired when necessary, and may, in a specified manner, be altered once, even though the alteration would increase the noncompliance.

Thus, the mere fact that the witness failed to predicate his opinion and calculations upon a present state of noncompliance does not, without more, establish that a finding of value based thereon was reversible error. It may be, for example, that the noncomplying structure has been "continued" with official permission. We may not say as a matter of law that it has not. Had the State wished to do so, it was free to attempt to prove the contrary and thereby undercut considerably the weight to be given McNabb's opinion testimony concerning the value of the remainder. Such was its burden.

 The State also contends the trial court erred in submitting Special Issue Number 1 concerning good-faith negotiations on the part of the State. The State contends that Sungrowth waived any complaint on that ground by participating in the hearing and presenting the merits of its case. *Phillips Pipeline Co. v. Woods*, 610 S.W.2d 204 (Tex.Civ.App.1980, writ ref'd n.r.e.). However, the State has failed to show, and we cannot comprehend, any resulting prejudice to the State arising from the submission and answering of this special issue. We hold the error was harmless. Tex.R.Civ.P. 434.

We therefore reform the judgment to delete the sum awarded to Sungrowth as compensation for lost profits, and we affirm the judgment as reformed.

---

**2.** Although this provision of the Austin Zoning Ordinance was not introduced into evidence at trial, we may nevertheless take judicial notice of its provisions. Under Tex.R.Evid.Ann. 204 (Supp.1986) (eff. Nov. 1, 1984), a trial court may now take judicial notice of a municipal ordinance. An appellate court may take judicial notice of facts which may be properly noticed by a trial court even though the trial court was not formally requested to do so and did not formally announce that it had done so. *Harper v. Killion*, 162 Tex. 481, 348 S.W.2d 521 (1961).