**The STATE of Texas, Appellant,**

v.

**WHATABURGER, INC., Appellee.**

No. 14–00–00203–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 6, 2001.

Rehearing Overruled Nov. 8, 2001.

Douglas P. Ray, Houston, for appellant.

H. Dixon Montague, Houston, for appellee.

Panel consists of Justices YATES, HUDSON, and DRAUGHN.*

## OPINION

HUDSON, Justice.

This appeal arises from the trial court's award of loss of profit damages for an impairment of access claim brought by appellee, Whataburger, Inc., in conjunction with its action to recover damages stem-

* Senior Justice Joe L. Draughn sitting by assignment.

ming from the statutory condemnation of its property. Appellant, the State of Texas, raises three issues in a single argument: (1) it challenges the trial court's award of impairment of access damages; (2) it asserts that the evidence is legally and factually insufficient to support the trial court's findings that there was an impairment of access; and (3) it alleges that the trial court abused its discretion in admitting evidence of damages due to lost profits. We affirm.

Whataburger owned and operated a restaurant on a 41,777 square foot tract of land at the intersection of U.S. 90A and the IH610 frontage road in Houston. The State began condemnation proceedings against Whataburger in order to acquire 8,421 square feet of the tract for a highway widening project. The portion of the property condemned by the State included both entrances to, and a portion of, Whataburger's parking lot. Moreover, the loss of the property caused a portion of the restaurant to extend beyond the new 25 foot building line. Both parties agree that the taking damaged the utility of the existing improvements to such an extent they had to be demolished. Whataburger subsequently relocated the restaurant further from the highway on the remainder of the property.

A special commissioners' hearing was held to assess Whataburger's damages and the commissioners awarded Whataburger $620,000.00 for the taking. Both parties filed objections and exceptions to the award. Whataburger claimed the award was less than the compensation to which it was statutorily entitled and asserted a separate constitutional claim for lost profits to its business caused by the State's alleged temporary, substantial impairment of access to its property. A trial was held before the court, and the court awarded Whataburger $1,255,622.80 for the statutory condemnation plus prejudgment interest. The State does not contest this judgment. The trial court also awarded Whataburger an additional $268,524.00 for lost profits arising from the State's impairment of access. This award is the singular focus of the State's appeal.

The Texas Constitution provides that no person's property "shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17. Translating this concept into a workable scheme that produces a "just, fair, and full compensation has often engrossed the best thought of the courts." *Hart Bros. v. Dallas County*, 279 S.W. 1111, 1111 (Tex. 1926). Because all enhancements, whether public or private, are rarely achieved without some inconvenience, not all "damages" are compensable. Increased access to property often enhances its value; the inconvenience and temporary impairment which a property owner suffers when street improvements are made is simply an incident of city life and must be endured. "The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made." *L–M–S Inc. v. Blackwell*, 149 Tex. 348, 233 S.W.2d 286, 289 (1950) (*quoting Farrell v. Rose*, 253 N.Y. 73, 170 N.E. 498, 499 (1930)). Thus, a property owner may not generally recover for increased traffic noise, dust, diversion of traffic, circuity of travel, reduced visibility by the public, etc. *Felts v. Harris County*, 915 S.W.2d 482, 485 (Tex. 1996); *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex.1994).

At the same time, however, a property owner is entitled to be fully compensated for any involuntary taking of his property. This compensation is measured

not solely by the taking of, or injury to, real property, but to all tangible and incorporeal property appurtenant thereto. *State v. Biggar*, 848 S.W.2d 291, 296 (Tex. App.—Austin 1993), *aff'd*, 873 S.W.2d 11 (Tex.1994). Because a business is property, the owner is entitled to be compensated under some circumstances for lost profits arising from the State's denial of access. Here, the State contends Whataburger was not entitled to lost profits because it presented no evidence of physical barriers barring access to the remainder of the property. Moreover, because Whataburger has been compensated for the taking of its property, the State asserts its separate claim for lost profits constitutes a double recovery.

The parties are in agreement on the facts, and the question of whether there is an impairment of access to the remainder as a direct result of the taking is a question of law. *Precast Structures, Inc. v. City of Houston*, 942 S.W.2d 632, 636 (Tex.App.—Houston [14th Dist.] 1996, no writ). Thus, we will review the issue *de novo* and without deference to the lower court's conclusion. *Id.* To maintain an impairment of access action, a plaintiff must establish that the State materially and substantially impaired access rights to his property. *State v. Heal*, 917 S.W.2d 6, 9 (Tex.1996). To recover lost profits due to a material and substantial impairment of access to one's property, the owner must show there has been: (1) a total but temporary restriction of access; (2) a partial but permanent restriction of access; (3) or a temporary limited restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed. *City of Austin v. Avenue Corp.*, 704 S.W.2d 11, 13 (Tex.1986).

Whataburger contends the State's partial taking of its property caused a total, but temporary denial of access. Be-cause its restaurant had to be razed and rebuilt, Whataburger claims it was totally denied access for nine months. The State responds by asserting that because no physical barrier barred access to the property, the evidence is insufficient to support a denial of access claim. We disagree. A building that has been razed and no longer exists cannot be entered. Accordingly, while no physical barrier prevented ingress or egress upon the remaining land, we find Whataburger was effectively denied access to the improvements thereon. Thus, we find the evidence is both legally and factually sufficient to support such a finding. We next consider, however, whether denial of access is compensable when the condemnee has already been compensated for the market value of the property.

Whataburger was awarded the market value of the whole property before the taking less the value of the remainder after the taking, including the cost of demolishing the improvements on the remainder. Thus, if the profitability of Whataburger's restaurant was a factor in arriving at the "market value" of the property, it cannot also recover for lost profits. *See State v. Travis*, 722 S.W.2d 698, 699 (Tex.1987) (holding owner could not recover lost business profits "as a separate item of damages over and above the fair market value of the land taken and the damages occasioned to the remainder by reason of the taking"); *State v. Zaruba*, 418 S.W.2d 499, 502–03 (Tex.1967) (where improvements are rendered valueless by a partial taking, the injury to the business, including the cost of removal and reconstruction on the remainder are considered, not as a separate item of damage, but as affecting the market value of the remaining land); *City of Dallas v. Priolo*, 150 Tex. 423, 242 S.W.2d 176, 179 (1951) (where damage to owner's business was

considered in determining the value of the remainder, an award for lost profits constitutes a double recovery).

■ The term "market value" means "the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." *State v. Carpenter*, 126 Tex. 604, 89 S.W.2d 979, 980 (Tex. Comm'n. App.1936, holding approved). The three traditional approaches to determining market value are (1) the comparable sales method, (2) the income method, and (3) the cost method. *Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 615–17 & n. 14 (Tex.1992).

■ Courts have traditionally favored the comparable sales approach. *City of Harlingen v. Sharboneau*, 48 S.W.3d 177, 182 (Tex.2001). Under a comparable sales analysis, the appraiser utilizes data from sales of similar property, then makes upward or downward adjustments to these sales prices based on differences in the subject property. *Id.* This method is frequently used in assessing the value of raw land, residential property, and many types of commercial property.

■ In some instances, commercial property is appraised using an income analysis. This method is appropriate when property would, in the open market, be priced according to the income it already generates. *City of Harlingen*, 48 S.W.3d at 183. By estimating this future income and applying a capitalization rate, the income approach allows the appraiser to arrive at a present value for income-producing property. *Id.*

■ Where the unique character of the improvements result in a limited market so that such property is not frequently exchanged on the marketplace and the customary testimony regarding market price derived from comparable sales is not available, courts have had to rely on the replacement cost approach. *Id.* at 183; *Religious of the Sacred Heart*, 836 S.W.2d at 615. Under a cost analysis, the appraiser first ascertains the market price of the land alone using a comparable sales analysis. *Id.* He then adds to this figure the cost of reproducing the building less depreciation of the structure. *Id.*

■ No matter what appraisal method an expert uses, the goal is always to find the fair market value of the condemned property. *City of Harlingen*, 48 S.W.3d at 183. An appraisal method is only valid if it produces an amount that a willing buyer would actually pay to a willing seller. *Id.* However, we find the market value of condemned property does not always reflect its profitability.

■ When market value is computed using the comparable sales method, the profitability of the property is an inherent factor because a willing buyer will normally pay more for a tract containing a profitable enterprise than for a similar tract containing an unprofitable enterprise. Thus, "[t]he ability of a business to make a profit is reflected in its market value." *City of San Antonio v. Guidry*, 801 S.W.2d 142, 150 (Tex.App.—San Antonio 1990, no writ). Whether there is an interruption of profits or the condemnee ever rebuilds his business is of no moment because he has been fully compensated for the taking.

■ Likewise, when the income method is used, the profitability of the property is specifically included in the calculation. Again, any award for lost profits would constitute a double recovery.

■ However, when the cost method is employed, profitability is not a factor in determining market value. In fact, this method is employed precisely because the

improvements are of such a specialized nature they are unlikely to make the property significantly more desirable to a prospective buyer. Hence, the profitability of the existing business does not enhance the market value of the property and is not considered in its determination.

 Here, there was a partial taking of property containing a fast food restaurant constructed in a distinctive pseudo A-frame style that is recognizable across the country as a Whataburger restaurant. Because of the specialty nature of the building, appraisers for both sides utilized the cost method in calculating market value. Because the profitability of the business was never considered in calculating market value, Whataburger's claim for lost profits does not constitute a double recovery. We also note that the restaurant had been in business since 1989; the amount of lost profits was easily calculated from past business records and was not overly speculative. Moreover, both parties agreed that the time reasonably required to reconstruct the restaurant was nine months.

Accordingly, under the facts presented here, we find (1) the trial court did not err in awarding Whataburger compensation for impairment of access; (2) the evidence is legally and factually sufficient to support the court's finding of an impairment of access; and (3) the court below did not abuse its discretion in admitting evidence of lost profits. The judgment of the trial court is affirmed.