# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-07-00566-CV

**AVM-HOU, Ltd., Appellant**

**v.**

**Capital Metropolitan Transportation Authority, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-06-000530, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

### O P I N I O N

Capital Metropolitan Transportation Authority condemned real property located in Austin, Texas, to use for its bus maintenance facility. AVM-HOU, Ltd. had operated a business on the property as a lessee. Following judgment in the statutory eminent domain proceeding, in which the amount of compensation due for the taking was established, and following apportionment of the condemnation proceeds between the landowner and the lessee, AVM filed suit in district court against Capital Metro, seeking compensation for the taking of its business, based on the theory that, because AVM was unable to relocate its business due to the unique nature of the location for the type of business involved, the taking of the real property resulted in a taking of the business. The district court granted Capital Metro's motion for summary judgment and dismissed all of AVM's claims. We agree with the district court that there is no cause of action in Texas for compensation

for the loss of a business that is damaged by the taking of the entire property on which the business is located independent from the lost value of the property itself. We affirm the judgment of the district court.

***Factual and Procedural Background***

AVM and its affiliates operate adult video stores, with existing locations in several Texas cities, including one in south Austin under the name "Adult Video Megaplexxx." In July 2003, AVM leased property at 9325 Burnet Road in Austin, Texas, from 9325, Inc., the landowner, with plans to open a new Megaplexxx location in north Austin. AVM purchased the existing business on the property, which, operating under the name "Nirvana," sold tobacco products and some adult-oriented materials. In conjunction with the lease and purchase, AVM obtained from the City of Austin a zoning change on the property to allow its use as an "adult-oriented business."[1]

Shortly after the commencement of the lease, AVM learned that Capital Metro had identified 9325 Burnet Road as a site to be acquired by eminent domain—the entirety of the tract in fee simple—to provide road access to a bus maintenance facility to be located on a nearby tract of land. Based on this information, AVM cancelled its plans to remodel the store at 9325 Burnet Road to make it similar to AVM's other stores in appearance, inventory, and operation. Instead, AVM undertook a search for a new location in Austin to operate its business. However, according to AVM, it was unable to find a suitable location, due, in part, to the zoning required for operating an adult-oriented business.

---

[1] Prior to the zoning change, the existing business could sell adult-oriented products, but no more than 35 percent of its gross floor area could be devoted to such business.

Capital Metro proceeded with condemnation, and on August 31, 2004, the special commissioners made an award of $1,450,000, which included a premium for the zoning obtained by AVM. The award was subsequently increased to $1,535,000 by settlement agreement between the parties. In its September 16, 2004 judgment on the settlement agreement, the Travis County commissioners court expressly found:

> that AVM/HOU, Ltd., is not by this judgment being compensated for any possible claim for an inverse taking of their business or any other non real property interest and that the filing of the judgment shall not serve to prejudice their ability to bring such an inverse condemnation action or recover thereon, if entitled.

The portion of the suit apportioning the condemnation proceeds between 9325, Inc. and AVM was severed into a separate cause number. AVM also pursued an independent action against 9325, Inc. in Travis County district court, alleging fraud and other claims. AVM and the landowner eventually reached an agreement through mediation by which AVM received $210,500 of the condemnation proceeds, settling both lawsuits between the parties.

On February 13, 2006, AVM filed suit in Travis County district court against Capital Metro, claiming inverse condemnation. AVM alleged in its petition that when it was forced by Capital Metro's actions to vacate the real property leased at 9325 Burnet Road, "there was no suitable alternative location for AVM's business." Based on this alleged taking of its business, under the authority of article I, section 17 of the Texas Constitution and the Fifth Amendment to the United States Constitution, AVM sought the value of the business, its good will, and lost profits.

Both Capital Metro and AVM filed traditional motions for summary judgment on whether AVM could establish its inverse condemnation claim, and both parties filed no evidence

motions for summary judgment on whether there was a suitable alternative location for AVM's business. On August 17, 2007, the district court granted Capital Metro's motion for summary judgment in part, and denied AVM's motion for summary judgment in its entirety. The district court denied Capital Metro's no evidence motion on the issue of a suitable alternative location. However, the district court entered judgment against AVM on the following grounds asserted by Capital Metro in its traditional motion for summary judgment:

1.      Plaintiff, as a matter of law, has no cause of action for inverse condemnation with respect to 9325 Burnet Road, Austin, Texas, because an action for inverse condemnation occurs when an owner seeks compensation for property taken for public use without formal condemnation proceedings having been instituted, and, in this case, formal eminent domain proceedings had been previously initiated and completed with respect to Plaintiff's leasehold property interests in 9325 Burnet Road, Austin, Texas, and, further, no taking is alleged or occurred outside of the formal eminent domain proceedings.

2.      There is no cause of action in Texas, as a matter of law, for a tenant to recover alleged lost profits and/or good will of a business located upon realty which was acquired, in its entirety, for public use by eminent domain.

3.      Even if such a cause of action for a tenant existed under Texas law, AVM, as a matter of law, has not established a claim thereunder, because AVM did not establish or operate at 9325 Burnet Road, Austin, Texas, the "Megaplexxx" business for which AVM seeks recovery of alleged lost profits and/or good will.

. . . .

6.      Even if such a cause of action for a tenant existed under Texas law, AVM, as a matter of law, cannot establish a claim thereunder because . . . the condemnation award for 9325 Burnet Road included a premium on the value of the location resulting from the "sexually oriented business" zoning obtained by AVM . . . .

4

*Discussion*

We review summary judgments de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). AVM challenges each of the grounds relied on by the district court in granting summary judgment. Each of the grounds was asserted in Capital Metro's traditional motion for summary judgment. Under the standard applicable to a traditional motion for summary judgment, the motion should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing a motion for summary judgment, we accept as true all evidence favoring the non-movant, making every reasonable inference and resolving all doubts in the non-movant's favor. *See Nixon*, 690 S.W.2d at 548-49. For purposes of our review, we will accept as true that the relocation of AVM's business was an impossibility. We must affirm the summary judgment if any of the grounds presented to—and potentially relied on by—the district court are meritorious. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.).

In an action to condemn real property, lost profits for a business located on the property are not recoverable as a separate item of damages over and above the fair market value of the land taken. *State v. Travis*, 722 S.W.2d 698, 698-99 (Tex. 1987). Evidence of lost profits may, nonetheless, be admitted as it bears upon the value of the land taken (or the diminution in value of the remainder). *See State v. Sungrowth VI, Cal., Ltd.*, 713 S.W.2d 175, 177 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

In this action, however, AVM has asserted an *inverse* condemnation claim independent from the statutory condemnation action. An eminent domain action under which the government takes real property is a statutory cause of action. *See* Tex. Prop. Code Ann. §§ 21.011-.024 (West 2004 & Supp. 2007). An inverse condemnation claim is a constitutional claim. *See* Tex. Const. art. I, § 17. An inverse condemnation claim is "initiated by a property owner to recover compensatory damages for injury done to his property by the act of an entity having, but not then exercising, the power of eminent domain." *City of Austin v. Casiraghi*, 656 S.W.2d 576, 581 (Tex. App.—Austin 1983, no writ). The claim is denominated "inverse" because the property owner asserts the claim. *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 387 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In general, to establish an inverse takings claim, a plaintiff must prove (1) the governmental entity intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001).

It is not disputed that a landowner or lessee might be able to obtain lost profits where, upon a taking of a portion of the real property (a partial taking), the government's additional act related to the taking impairs the business as it attempts to operate on the remainder property. *See City of Austin v. Avenue Corp.*, 704 S.W.2d 11, 13 (Tex. 1986) (setting forth cause of action for impairment of access to business on real property); *City of La Grange v. Pieratt*, 175 S.W.2d 243, 245-46 (Tex. 1943) (claim for damages to business operating on remainder property caused by construction activities on condemned property "may, and should be presented at the condemnation

6

proceeding").[2] No Texas appellate court, however, has allowed the recovery of the loss of a business that results from the taking of the *entire* property on which the business is located (a total taking). AVM takes the position that its case is unique in that not only was the real property taken, but due to the nature of its business, relocation was an impossibility. Thus, to avoid the settled law that lost profits related to the loss of a business are not compensable upon a total taking of the real property, AVM argues that the impossibility of relocation transforms the loss of its business at 9325 Burnet Road into a "second taking," for which it can recover under an inverse condemnation claim.

A similar argument was made to the Dallas Court of Appeals in 1946. In *Reeves v. City of Dallas*, 195 S.W.2d 575 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.), the court addressed a condemnation proceeding for the whole of the land on which a lessee was operating a

---

[2]  Capital Metro disputes whether AVM can bring an inverse condemnation suit independently from the statutory condemnation action through which Capital Metro took the property on which AVM's business was located. Capital Metro argues that the "single action" rule required AVM to seek any damages arising from the taking—including any losses relating to its business—as consequential damages in the statutory condemnation action, and cannot obtain a "second bite at the apple" through this inverse condemnation action. *See City of La Grange v. Pieratt*, 175 S.W.2d 243, 245-46 (Tex. 1943); *State v. McCarley*, 247 S.W.3d 323, 325-27, 330 (Tex. App.—Austin 2007, pet. filed). This is particularly true, Capital Metro urges, where the compensation AVM actually recovered in the statutory action reflected a "premium" for the zoning that enabled it to operate its business at that location. AVM responds by attempting to distinguish between the value of its *leasehold interest*, which it characterizes as the focus of the statutory action, and the value of its *business*, for which it seeks compensation in this action. The latter, AVM maintains, was not recoverable in the statutory condemnation action.

We need not, however, resolve this dispute. We hold that the summary judgment was properly granted based on the second ground provided by the district court for its decision. Because our holding is dispositive as to all of AVM's claims, we need not decide whether the type of lost business damages that AVM seeks would, in concept, be consequential damages arising from the statutory taking of the property on which AVM's business was located and be recoverable in a statutory condemnation proceeding.

business. The landowner was compensated for the value of the land, and the lessee was compensated for the value of the lease. *See* 195 S.W.2d at 577. On appeal, the lessee argued that it should also recover for damages to its business, including loss of profits that would have been generated by its business. Among the facts of the case, the court noted the lessee's assertion that "when the City condemned his leasehold interest he had no place to locate his business." *Id.* at 581. Thus, the court in *Reeves* faced a similar situation to that presented by this case. Even with the allegation by the lessee that relocation of the business would be impossible, the *Reeves* court rejected the argument that the lessee should be able to recover compensation for damages to its business following the taking of the land on which the business was located.

> After reviewing all the authorities submitted, we are of the opinion that they are in accord with the rule that future rights, business losses and profits are not recoverable where the whole of the estates are "taken" for public use. . . . Homestead rights, business rights and all other consequential rights incident to possession of physical properties . . . must be subservient to the public's right of eminent domain.

*Id.* at 584.

For an answer to *Reeves*, AVM looks to Texas cases decided since *Reeves*. The court in *Reeves*, in its discussion, noted that there were "no Texas cases with the factual background as involved in this case." *Id.* at 583. AVM in its briefing indicates that this is no longer the case, stating that "Texas courts have allowed recovery of business damages when the underlying physical property has been condemned, or have indicated that such a recovery properly pled and proven could result in recovery." However, none of the cases relied on by AVM stand for this proposition.

In *City of Austin v. Casiraghi*, the City sought to acquire by eminent domain three lots, in their entirety, on which the owners operated a restaurant. *See* 656 S.W.2d at 578. At the trial, the owners stipulated to the value of the real property, but then sought to establish the value of their restaurant business independently of the value of the land upon which it was operated. *Id.* at 578-79. The owners contended that "the restaurant could not practically be relocated elsewhere" and, therefore, the taking of the real property destroyed their business. *Id.* at 579. On appeal, this Court recognized that no recovery for the loss of the business could be had under the eminent domain statutes, since the whole of the owner's land was taken. *See id.* at 581. In addition to the City's statutory action, the owners asserted a right to bring a "constitutionally-based claim independent of the eminent domain statutes," as AVM attempts to do here, arguing that "the value of [a] business may be ascertained and recovered as an independent element of damages in a separate constitutionally-based right of action, where the City sought neither title nor possession of that business in its pleading." *See id.* at 579-80. This Court expressed no opinion on the viability of the owners' constitutional claim, however, because the owners had failed to allege a separate cause of action reflecting that claim in their pleadings. *See id.* at 580. The *Casiraghi* opinion does not indicate or suggest, however, that, if properly pleaded and proven, recovery of damages for loss of the business could be had upon a total taking.

The court in *State v. Rogers*, 772 S.W.2d 559 (Tex. App.—Amarillo 1989, writ denied), considered whether, in a proceeding to condemn for highway right-of-way purposes the whole of the landowners' real property, the landowners were entitled to present evidence on the "good will" and "good concern" values of their automobile parts business. 772 S.W.2d at 559-60.

9

The landowners recognized the "established rule" prohibiting compensation for such losses in a statutory condemnation action but contended that such rule "flies in the face of modern views." *Id.* at 561. The Amarillo Court of Appeals disagreed, concluding that even if the business did have a "unique and particular relationship" to its location, any damage was to the business only and could not be compensated in a statutory condemnation action, which is an in rem proceeding for the taking of the real property. *See id.* at 561-62. The court then added, "While such damage might arguably be recovered under Texas Constitution art. I, section 17, as a separate cause, *under the pleadings*, it was not recoverable in this proceeding." *Id.* at 562 (emphasis added). While the courts in *Casiraghi* and *Rogers* acknowledged that a property owner might pursue such a theory, both courts expressly declined to rule on the viability of such a claim because it was not properly before them.

In *State v. Sungrowth VI, California, Ltd.*, the State had initiated an eminent domain proceeding, taking a strip of land for highway-widening purposes from a property on which the landowners operated an apartment complex. *See* 713 S.W.2d at 176. The trial court awarded amounts for the taken portion, the diminution in the value of the remainder portion, and the business profits expected to be lost due to the State's construction activities. *See id.* at 176-77. On appeal, this Court recognized that lost profits may be obtained in an inverse condemnation action where there is "a material and substantial interference with access" to one's business property. *Id.* at 177 (quoting *Avenue Corp.*, 704 S.W.2d at 13). However, the Court reversed the trial court's award of lost profits because there was "no finding of *any* interference whatever with access to appellees' property." *Id.* at 177. The Court then noted that a landowner could "arguably" recover lost profits for interference with access "in addition to and independent of" compensation for the State's

statutory taking. *Id.* AVM argues that *Sungrowth* "suggest[s] that the property [owner] would be entitled to make a claim for such business related damages if the property owner, in addition to and independent of the real property issues of the condemnation case, could establish the elements of an inverse condemnation action where such kinds of damages are recoverable." We agree that the court in *Sungrowth* recognizes such a possibility in the context of a partial taking. However, this provides no assistance here. In *Sungrowth*, the alleged business-related damage would have occurred in the context of a business continuing to operate on the remainder property. Here, a total taking has occurred, with no remainder property for AVM's business to continue to operate where it could be harmed by a governmental act giving rise to an inverse condemnation claim.

The court in *State v. Whataburger, Inc.*, 60 S.W.3d 256 (Tex. App—Houston [14th Dist.] 2001, pet. denied), also dealt with the State's condemnation of a strip of land for a highway-widening project. In *Whataburger*, the loss of the condemned strip made it necessary for the restaurant on the property to be demolished and relocated on the remainder property. *See* 60 S.W.3d at 260. In addition to compensation for the statutory condemnation, the trial court awarded the landowner lost profits arising from the State's "impairment of access." *See id.* The court of appeals affirmed the trial court's judgment on the landowner's inverse condemnation claim, holding that the landowner was entitled to recover lost profits during the time the restaurant was being rebuilt. The court noted: "Accordingly, while no physical barrier prevented ingress or egress upon the remaining land, we find Whataburger was effectively denied access to the improvements thereon." *Id.* at 261. We need not take a position on whether a building's relocation on a tract required by the State's taking of a portion of the tract constitutes a compensable impairment of

11

access. We simply observe here that, just as in *Sungrowth*, the *Whataburger* court's consideration of lost profits involved a partial taking, with the business attempting to operate on the portion of the property *not* subject to the condemnation proceeding.

AVM also points to the fact that *Reeves* predates *City of Dallas v. Jennings*, 142 S.W.3d 310 (Tex. 2004). In *Jennings*, the City's act in unclogging a sewage backup caused a "raw sewage flood" in the plaintiffs' home. *See* 142 S.W.3d at 312. The plaintiffs sued for compensation for a taking under article I, section 17 of the Texas Constitution. The issue in dispute was what level of intent or scienter is required on the part of the governmental entity before an act by the governmental entity that causes damage to property becomes a compensable "taking." The City contended that the "intentional act" component of an inverse condemnation claim meant that the damage itself must be intentional. However, the plaintiffs contended it required only that the act causing the damage be intentional. In its opinion, the court held as follows:

> [W]hen a governmental entity physically damages private property in order to confer a public benefit, that entity may be liable under Article I, Section 17 if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action . . . .

*Id.* at 314. We are not persuaded that this language—relating to whether a city knowingly harms private property in the process of conferring a public benefit—has any impact on the *Reeves* court's conclusion that damage to business interests is not compensable when it results from a total taking of real property.

The court in *Jennings* was faced with the question of what level of intent or knowledge by the City is required for the property owner to be entitled to compensation for damages

12

caused by the City's act in "taking" property, when there was no actual physical occupancy of the property by the City. *See id.* at 313. AVM submits that its case is similar, in that Capital Metro's act of condemnation caused damages to AVM's business, even though Capital Metro did not actually "occupy" the business. However, the rule established by the court in *Reeves* does not turn on a question of intent or knowledge. On the contrary, the court in *Reeves* was concerned, as we are here, with the separate question of what *type* of harm is compensable. *Cf. State v. Schmidt*, 867 S.W.2d 769, 773-77 (Tex. 1993) (upon State's conversion of road to controlled-access highway, business owner could not obtain compensation under an inverse condemnation claim for diversion of traffic, increased circuity of travel to the property, lessened visibility to passersby, or inconvenience of construction activities). Whether a type of harm is compensable may involve considerations such as the nature of and reason for the government's act, the type and extent of injury suffered by the property owner, and policy considerations. *See generally Reeves*, 195 S.W.2d at 581-84. It was in this context that the court in *Reeves* held that damages to a business as a result of the underlying real property's condemnation are not compensable when there is a total taking. *See id.* at 584. *Jennings* neither addressed nor spoke to this issue. We are of the view that the *Jennings* case does not undermine or alter the holding in *Reeves*.

AVM has not directed us to any Texas case that, in the sixty-plus years since *Reeves* was decided, has questioned *Reeves*'s conclusion that damages to business interests are not compensated when they occur as a result of the statutory taking of the entirety of the property on

13

which the business is located.[3] The Texas cases AVM cites to support its position either do not take up the issue of an inverse condemnation claim for damages to a business, or involve a partial taking in which the business attempts to continue its operation on the remainder property.

AVM also points to federal case law applying the United States Constitution. In construing the takings provision of the Texas Constitution, we may look to the United States Supreme Court's interpretation of the federal Takings Clause. *City of Austin v. Travis County Landfill Co.*, 73 S.W.3d 234, 238 (Tex. 2002). *Compare* U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."), *with* Tex. Const. art. I, § 17 ("No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . .").

Indeed, the court in *Reeves*, in reaching its holding, consulted federal case law for this purpose. *See Reeves*, 195 S.W.2d at 583. In doing so, the court quoted the following language of the United States Supreme Court:

---

[3] AVM attempts to distinguish *Reeves* by pointing out that "the tenant in *Reeves* did not bring a separate inverse condemnation action," and, thus, the "only issue before the jury in that in rem statutory condemnation case was the value of the real property interests involved." We agree with AVM that the tenant in *Reeves* limited its recovery in the trial court to "adequate compensation for the taking of its leasehold." *See Reeves v. City of Dallas*, 195 S.W.2d 575, 581 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.). However, regardless of whether the tenant failed to assert a separate inverse condemnation claim, the tenant, on appeal, based its right of recovery on relevant statutes *and* article I, section 17 of the Texas Constitution. *See id.* at 581, 582. In determining that the tenant was not entitled to recover damages to its business, the court not only considered the applicable statute and the nature of an in rem proceeding, but also separately concluded that business losses were unavailable under the constitution. *See id.* at 583-84. If damages are unavailable under article I, section 17 in a direct condemnation action, we see no reason why they should become available under article I, section 17 for the same taking, merely because the business owner asserts the claim in a separate lawsuit.

14

The sovereign ordinarily takes the fee. The rule in such a case is that compensation for that interest does not include future loss of profits, . . . the loss of goodwill which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign. . . . We are not to be taken as departing from the rule they have laid down, which we think sound.

*United States v. General Motors Corp.*, 323 U.S. 373, 379-80 (1945). United States Supreme Court precedent, therefore, supported the court's conclusion in *Reeves* that damages to a business are not compensable when the underlying land is taken in its entirety.

AVM contends that the federal Constitution permits AVM's claim based on the holding in *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949), which was issued by the United States Supreme Court after *Reeves* and *General Motors*. In *Kimball*, the United States had condemned a laundry facility for use by the Army, which use continued for more than three years. *See* 338 U.S. at 3. The Court concluded that under the Fifth Amendment, the business owner should be compensated for the value of its "trade routes"[4] lost or diminished due to the interruption in business operations. *See id.* at 16. AVM's reliance on *Kimball* is based on the Court's statement that "an exercise of the power of eminent domain which has the inevitable effect of depriving the owner of the going-concern value of his business is a compensable 'taking' of property." *Id.* at 13. We recognize that such language, standing alone, might support the argument that business losses should be recoverable where the business is unable to relocate following a taking of real property. Indeed, AVM refers us to an opinion by the Minnesota Supreme Court that relied on this language

---

[4] The Court used the term "trade routes" to refer to "the lists of customers built up by solicitation over the years and for the continued hold of the Laundry upon their patronage." *Kimball Laundry Co. v. United States*, 338 U.S. 1, 8 (1949).

15

in *Kimball* to award a business owner the going-concern value of its liquor license lost as an "inevitable effect" of the state's taking by eminent domain of the property on which the business operated. *See State v. Saugen*, 169 N.W.2d 37, 43-44, 46 (Minn. 1969). AVM urges that we interpret *Kimball* in the same manner as the Minnesota court.

In order to conclude that *Kimball* supports the notion that business losses are recoverable where there is a total taking and an inability to relocate, however, we would need to ignore the Supreme Court's language in *Kimball* expressly acknowledging the general rule to the contrary. Prior to setting forth the "inevitable effect" language relied on by AVM, the Court in *Kimball* indicated that its reasoning did not extend to a taking of fee title to land:

> When a condemnor has taken fee title to business property, there is reason for saying that the compensation due should not vary with the owner's good fortune or lack of it in finding premises suitable for the transference of going-concern value. In the usual case most of it can be transferred; in the remainder the amount of loss is so speculative that proof of it may justifiably be excluded. By an extension of that reasoning the same result has been reached even upon the assumption that no other premises whatever were available.

*Kimball*, 338 U.S. at 12 (citations omitted). The Court in *Kimball* did craft an exception to the general rule of no compensation for damages to a business—but not for situations in which damages to the business could be deemed "inevitable." Instead, the Court crafted an exception for when the government's taking is merely *temporary*. *See id.* at 14-16 & n.6. After setting forth the "inevitable effect" language relied on by AVM, the Court in *Kimball* clarified that this distinction left the general rule intact as to takings of fee title:

16

> The temporary interruption as opposed to the final severance of occupancy so greatly narrows the range of alternatives open to the condemnee that it substantially increases the condemnor's obligation to him. It is a difference in degree wide enough to require a difference in result.

*Id.* at 15. Moreover, the concurrence by Justice Rutledge was expressly limited to this same distinction. *See id.* at 21-22 (Rutledge, J., concurring) ("As I understand the opinion of the Court, its effect is simply to recognize that short-term takings of property entail considerations not present where complete title has been taken. . . . With this much I agree."). In sum, we believe *Kimball* stands for the proposition that while temporary takings may "inevitably" deprive the owner of the going-concern value of his business, takings of fee title, as a matter of law, do not.[5]

We are not persuaded, therefore, that *Kimball* alters the analysis in *Reeves*. The general rule that the Constitution does not permit compensation for consequential damages such as lost profits upon the total taking of real property remains applicable. *See Hooten v. United States*, 405 F.2d 1167, 1168 (5th Cir. 1969) ("It is well settled that where a business is damaged or destroyed incident to the condemnation of land, such losses are not compensable under the Fifth Amendment."); *Adaman Mut. Water Co. v. United States*, 278 F.2d 842, 845-46 (9th Cir. 1960) ("The consequential loss rule, much maligned, and somewhat dented, is with us still." (citations omitted)). The United States Supreme Court has identified some exceptions to the rule. *See, e.g.*,

---

[5] We observe that *General Motors* may have been overruled in part by *Kimball*, in that the Court in *General Motors*, although distinguishing a temporary taking from a taking in fee title, did not permit the recovery of damages to a business from the temporary taking "as independent items of damage." *United States v. General Motors Corp.*, 323 U.S. 373, 383 (1945). *General Motors* has not been overruled by *Kimball*, however, on the point pertinent to this case—where there is a total taking of real property, damages to a business are generally not recoverable under the Constitution. *See id.* at 379-80.

*Kimball*, 338 U.S. at 14-15 (temporary takings). However, AVM does not argue the applicability of any of these exceptions in this case.[6]

Contrary to AVM's argument that the federal Takings Clause enables it to obtain compensation for the loss of its business, according to the United States Supreme Court, "[t]o recover, they must show some statutory right conferred." *See Mitchell v. United States*, 267 U.S. 341, 345 (1925). AVM's cause of action is not based on any statutory right conferred.

Lastly, AVM asserts that Capital Metro's motion for summary judgment did not address "the other inverse condemnation theories pled by AVM in their Second Amended Petition." In addition to AVM's theory that the impossibility of relocation made its lost business a compensable taking, AVM alleged in its petition that the taking of real property constituted a denial of access to its business. *See Avenue Corp.*, 704 S.W.2d at 12 (allowing lost profits under an inverse condemnation claim for impairment of access where there is (1) "a total but temporary restriction of access"; (2) "a partial but permanent restriction of access"; or (3) "a temporary limited restriction of access brought about by an illegal activity or one that is negligently performed or unduly delayed"). Also, AVM alleged in its petition that its loss of business was a denial of all

---

[6] We might be compelled to undertake a different inquiry, for instance, if Capital Metro's taking was merely temporary, *see Kimball*, 338 U.S. at 14-16; if AVM's business itself was taken and operated by Capital Metro, *see City of Omaha v. Omaha Water Co.*, 218 U.S. 180 (1910); if AVM alleged an independent government action of changing the zoning on a remainder property or on a subsequently leased property in a manner that damaged its business, *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933-38 (Tex. 1998); or if Capital Metro's taking was done in bad faith, *see Westgate, Ltd. v. State*, 843 S.W.2d 448, 454 (Tex. 1992) (suggesting, but not deciding, that a cause of action for inverse condemnation might be raised where the condemning authority acts in bad faith to cause economic damage to the landowner). These are not the facts of the case before us. Here, despite AVM's creative theory, only one "taking" has occurred, that of real property for a public purpose, leaving no remainder property. For such a taking, AVM has already had its opportunity, in the prior statutory condemnation action, to receive the compensation that it is due as a lessee under Texas law.

18

economically viable use of its business, or an unreasonable interference with AVM's right to use and enjoy its business property. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 935 (Tex. 1998).

We disagree that the motion for summary judgment granted by the district court did not articulate grounds that encompassed all of AVM's claims. The rule that damages to a business from the condemnation of real property in its entirety are not compensable applies to constitutional takings claims whatever form they take in the pleadings. Pleading multiple inverse condemnation theories does not change the result here, because AVM does not dispute the material fact that the condemnation of 9325 Burnet Road was a total taking of the real property.

### Conclusion

When real property is acquired by eminent domain, in fee simple and in its entirety, there is no cause of action in Texas, as a matter of law, for inverse condemnation to recover for the loss of a business located upon the realty taken.[7] We affirm the judgment of the district court.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 29, 2008

---

[7] This holding is dispositive as to all of AVM's claims. Therefore, we need not address the other grounds on which the district court based its summary judgment. We express no opinion on the other grounds for granting summary judgment set out in the district court's order.