## LONE STAR GAS COMPANY V. CITY OF FORT WORTH ET AL.

No. 6715. Decided November 25, 1936.
Rehearing overruled January 6, 1937.
(98 S. W., 2d Series, 799.)

*Thompson & Barwise,* of Fort Worth, *Karl F. Griffith* and *Roy C. Coffee,* of Dallas, and *Ben H. Powell,* of Austin, for plaintiff in error.

The Lone Star Gas Company having alleged that it was the owner of the gas utility plant with all its property, rights, privileges, contracts and franchises, etc., and being entitled to the protection guaranteed to it by the Constitution, and that the City of Fort Worth through its agents and officials was

threatening and proposing in violation of said Constitution to take, condemn, injure, destroy and deprive plaintiff of its said property, and further alleged that there were no sufficient or adequate provisions of laws, charter or ordinances of the City of Fort Worth authorizing them so to take, etc., such property, and that such action, being without sanction of law, was invalid and void and would result in irreparable injury and damage to plaintiff, the district court should have entertained jurisdiction of the suit and heard the cause on its merits. Const. Art. 1, secs. 17, 19; Dallas County v. Plowman, 99 Texas, 509, 91 S. W., 221; Todd v. Massey, 30 S. W. (2d) 532; White v. Maverick County Water Control & Imp. Dist. No. 1, 35 S. W. (2d) 107; 16 Texas Jur., Eminent Domain, sec. 266.

*R. E. Rouer, Geo. C. Kemble, J. M. Floyd, R. B. Young, Jr.,* all of Fort Worth, for defendant in error.

Exclusive original jurisdiction in all condemnation proceedings in Tarrant County, Texas, has been conferred upon the County Court at Law No. One and No. Two, and it was not error for the district court to sustain defendant's general demurrer to plaintiff's petition. The City of Fort Worth having been given the right to take plaintiff's property by eminent domain, both by statute and city charter, the court having jurisdiction may prescribe rules of procedure where none have been provided by law. Board of Park Commissioners v. Dupont, 110 Ky., 743, 62 S. W., 891; Wilson v. Donna Irr. Dist., 8 S. W. (2d) 187; City of Brenham v. Brenham Water Co., 67 Texas, 542, 4 S. W., 143; Brown v. Clark, 102 Texas, 323, 116 S. W., 360; 44 C. J., 87, sec. 2168; 16 Texas Jur., 707, sec. 99.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This suit was instituted in the District Court of Tarrant County, Texas, by Lone Star Gas Company against the City of Fort Worth and its governing officials, and was for injunction. We will designate the parties as in the district court, and will regard the City as the real defendant.

The plaintiff is a corporation with its principal place of business in Fort Worth, and it owns and operates a gas distributing plant or system in that City by which it furnishes gas and gas service to the inhabitants thereof. In connection with this system it owns gas wells, leases, rights, contracts, franchises, pipes, pipe line, meters, easements, regulator stations, compressor stations, lands, buildings and other property, tangible and intangible, necessary and essential to constitute a

complete gas distributing system. Presumably, said company has owned and operated its gas system for some time under franchises from the City and in conformity with all the rules, regulations and requirements of the law and city ordinances governing a public utility of this kind.

The ground upon which the injunction was sought is thus stated in plaintiff's petition:

"That the City of Fort Worth and the defendants herein named are threatening and now propose to take, appropriate, condemn and deprive plaintiff of its gas distribution plant or system in the City of Fort Worth, together with its rights, privileges, contracts, franchises, easements, and its tangible and intangible, real and personal property therein, and to render valueless and useless all that portion of plaintiff's property and system used and useful in and devoted to the furnishing to the public of gas and gas service in the said City of Fort Worth and its environs, and that unless said defendants are restrained and enjoined in the premises, they will carry out their threats and purposes, to plaintiff's irreparable injury and damage in the sum of Twenty Million Dollars, for which plaintiff has no adequate remedy at law, as more fully appears from the allegations hereinafter contained."

The plaintiff in its petition contends that such proposed and threatened taking and appropriation of its gas system and properties by condemnation proceedings were without right or authority in law, and if permitted would violate its rights under Article 1, Section 17 of the Constitution of the State of Texas, which is as follows:

"No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person; and when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money."

The potential power of the City of Fort Worth to condemn all of plaintiff's property as a going concern is not seriously questioned. This power seems to be so definitely conferred by the general laws of the State, and particularly the charter provisions, that it cannot be questioned. We shall assume that such power on the part of the City of Fort Worth actually exists. But while recognizing the existence of the potential power, nevertheless plaintiff contends that before such power can be exercised there must be accompanying same specific legislative provisions guaranteeing to all parties affected by the exercise of the power adequate compensation for all of

their property taken or damaged, and setting up a certain and adequate method by which such compensation may be ascertained. In other words, plaintiff contends that although the City possesses the power to condemn its property, such power is dormant and cannot be legally exercised for several reasons, among which are the following:

1. Because there are no adequate and appropriate provisions in the general statutes of Texas or in the charter of the City of Fort Worth prescribing a method of procedure and the mode and manner of condemning property of the kind (other than real estate) owned by plaintiff and devoted by it to public service, such property being mainly personal and intangible in its character.

2. Because the only provisions in the general statutes of the State prescribing rules, regulations and procedure in condemnation proceedings are Articles 3264 to 3269, inclusive, of the Revised Statutes of 1925, which on their face are designed for guidance in proceedings for condemnation of real estate alone, and are inappropriate, inefficient, inadequate and inapplicable in a proceeding to condemn the property of plaintiff, consisting largely of personal property, franchises and intangibles.

3. Because the charter of the City of Fort Worth, in connection with the provision conferring upon the city the power to condemn the properties and business of public utilities, conditions the exercise of such power upon the proviso "that the city may adopt by its charter any such rules and regulations as it may deem advisable for the acquiring and operation of any such public utilities," thus providing an exclusive method by which said condemnation may be effectuated; and the city having failed to adopt such rules and regulations, there is no method of procedure provided by which plaintiff's properties can be legally condemned.

4. Because there are no adequate provisons in the charter of the City of Fort Worth securing plaintiff in its constitutional right to just compensation first made or secured by a deposit of money, and in the absence of provisions which guarantee such compensation, the constitutional provision is violated.

It is alleged and contended that in the absence of these essential provisions in the law, any attempted condemnation and taking of plaintiff's property would be void, and inasmuch as the City is threatening and proposing to institute proceedings to take plaintiff's property under laws which fail to confer

authority for that purpose, plaintiff can properly invoke the equitable powers of the court to prevent such threatened action, and consequent irreparable injury and damage.

The trial court sustained a general demurrer to plaintiff's petition and the Court of Civil Appeals affirmed such action. 68 S. W. (2d) 605. . Writ of error was granted in view of the constitutional questions involved and on account of the importance of the case.

Before proceeding to discuss the main questions involved, we remark that the City is not contending that the intention to institute the threatened suit was not bona fide, nor that the threat to do so was not real and impending. We will therefore, in light of the importance of the question to the public at large, consider the case as if such threat to institute the proceeding still exists and is imminent.

The Court of Civil Appeals affirmed the action of the trial court in sustaining a general demurrer on the ground that as the county court is by the general laws of the State given exclusive jurisdiction in eminent domain proceedings, such court alone has jurisdiction to decide whether or not the proposed action could be maintained, and to determine the questions raised by plaintiff touching the power and authority of the City to exercise the right of eminent domain as to plaintiff's property.

■ The question is not one merely of jurisdiction, as the Honorable Court of Civil Appeals appears to have thought. It goes beyond that, and involves an inquiry as to the existence of legislative authority to exercise the power to condemn, which, if absent, is such a limitation upon the county court's power to proceed as makes its action void if it does proceed. In the last analysis the question involved goes to the power of the county court to exercise its jurisdiction, and the district court undoubtedly has jurisdiction to inquire into the question of such power.

■ It is universally recognized that an attempt or threatened attempt to take private property for public use by virtue of eminent domain may be restrained by injunction when the proceeding is for any reason void. For instance, it has been held that a threatened taking of property in proceedings for condemnation conducted under an inapplicable statute may be enjoined. Dallas County v. Plowman, 99 Texas, 509, 91 S. W., 221. It has been held that a threatened taking under a statute which is unconstitutional may be enjoined. White v. Maverick

County Water and Improvement District (Com. App.), 35 S. W. (2d) 107. In that case the jurisdiction of the district court was questioned on the ground that the question involved should have been determined by appeal, and this contention was overruled. In the case of Benat v. Dallas County, 266 S. W., 539, in which writ of error was refused, proceedings for condemnation of property within the city limits of the City of Dallas, initiated by the Commissioners Court of Dallas County, were held void and the threatened taking was enjoined. In reality it appears that injunction is the appropriate remedy, when there is a threatened taking in any proceeding which may be void for any reason. In 10 R. C. L., page 228, it is said:

"When an illegal entry upon private land under color of eminent domain is undertaken or threatened, it will be restrained by a court of equity without regard to the customary requirements of equitable jurisdiction. If public officers, or a corporation having the power to take land for public use, attempt to make an appropriation in excess of the power granted by the Legislature or without complying with the conditions of the grant, an injunction will be issued as of course, even if the damage to the owner is trivial. The equitable jurisdiction in such a case is based upon the *attempted misuse of the sovereign power* delegated by the Legislature and upon the inequality of the parties by reason of the grant of a prerogative right to one of them."

In Lewis on Eminent Domain, Volume 2, Second Edition, Section 631, it is stated:

"It is now almost universally held that an entry upon private property under color of the eminent domain power will be enjoined until the right to make such entry has been perfected by full compliance with the Constitution and the laws. If the just compensation has not been made, or deposited as required by law, or if the proceedings under which the right to enter is claimed are invalid for any reason, an entry will be enjoined."

In the case of Osborne v. Missouri Pac., 147 U. S., 248, 13 Sup. Ct., 299, 37 L. Ed., 155, Chief Justice Fuller stated:

"Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy where the injury is destructive or of a continuous character, or irreparable in its nature; and the appropriation of private property to public use, under color of law, but in fact without authority, is such an invasion of private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded ex debito justitiae."

If it be found, then, that eminent domain proceedings are void when undertaken under a statute conferring the power but not making suitable and adequate provisions for the ascertainment of compensation and the payment thereof, there can be no question that injunction to restrain a threatened taking under such proceeding is proper. Improvement District v. Ft. Worth, 106 Texas, 148, 158 S. W., 164, 48 L. R. A. (N. S.) 994. In this case the Supreme Court, speaking through Justice Phillips, said:

"The Act under which this levee has been constructed, while clothing the districts thereunder authorized with the power of eminent domain, *makes no provision for the payment of compensation for lands damaged.* On the contrary it is therein provided by article 5569 that 'no county or improvement district, nor the taxpayers therein, shall be held for damages occasioned by the construction, maintenance or repair of levees or other improvements under the provisions of this chapter.'

"*Since no compensation is provided or offered for the injury* to which, according to the certificate, the appellee's property would be subjected by the completion of the levee, it is clear that for *this reason alone an injunction would lie* though the injury will be inflicted by an act in the interest of a public use." (Emphasis ours)

There are a multitude of cases holding that proceedings under a statute giving the right of eminent domain, but providing no compensation for the property taken, are void and may be enjoined. Exactly the same situation is present, so we think, when no adequate and appropriate procedure is established providing the mode and manner of ascertaining the amount of compensation. The result is exactly the same. In Nichols on Eminent Domain (2nd Edition), Vol. 1, p. 628, it is said:

"A statute which authorizes the taking of land for a particular public improvement and makes no adequate provision for the ascertainment and payment of compensation is not necessarily absolutely void, for the site of the improvement may be acquired by purchase; but that portion of the statute which authorizes the exercise of eminent domain is void, and the land owner has the same rights against any person interfering with his property under color of such authority as if the statute did not exist at all."

In 20 Corpus Juris, pp. 649-650 it is said:

"A statute authorizing the taking of private property for public use must not only provide for the payment of compensa-

tion, but also make provision for a certain and adequate remedy by which the compensation may be determined and by which the owner may procure the compensation."

A very apt statement of the rule is contained in the case of Watauga Water Company v. Scott, 111 Tenn., 321, 76 S. W., 888, by the Supreme Court of Tennessee, in this language:

"It is a fundamental principle of the law of eminent domain, and the taking of property for public use, that. it can only be done by making just compensation to the person whose property is taken, for its reasonable value; and any legislation which confers the right of eminent domain can only be valid upon condition that such compensation is provided for, and the *mode and manner of ascertaining and enforcing the same is fixed and established.*"

■ We will not pursue this discussion further, because it seems to be recognized by counsel for the City that if there is no provision. in the law for the exercise of the City's authority to condemn this particular class of property, the proceeding would not be valid. However, counsel strenuously contend that Articles 3264 to 3269 of the general statutes are available to the City, and that such articles afford an appropriate and adequate procedure for making effective its power to condemn, and furnish a suitable and sufficient method of determining the compensation to be paid plaintiff for its property and the damages occasioned to it by the taking. The principal inquiry before us now is to determine whether or not this is true.

It may be taken as conceded that the articles of the statute referred to are a part of the laws pertaining to the power of the City of Fort Worth to condemn property, so far as they are applicable and appropriate. For instance, if the City desired to condemn a tract of land for some public use, there is no doubt that it might proceed under these articles. But with this conceded, is it still true, as contended by plaintiff, that said articles were designed and intended to establish procedure only in cases of the taking of real estate and personal property necessarily incident to such real estate?

When we refer to Article 3264 of the Revised Statutes we find that while it declares that the exercise of eminent domain shall in all cases be governed by certain rules, nevertheless when it provides the rules it in substance does so in this language:

"When *real estate* is desired for public use * * * the party desiring to condemn the property after having failed to agree

with the owner of the *land* * * * shall file a statement * * * with the County Judge of the County in which the *land* is situated. It shall describe the *land* sought to be condemned, and state that plaintiff and the owner have been unable to agree upon the value of the land. Where the *land* lies in two or more counties * * * the statement shall be filed in the county of the owner's residence."

While Article 3265, fixing rules for ascertaining damages, has some language which might be said to be applicable to all kinds of property, yet when this article is read as a whole it seems clear that it is limited to real estate and such physical properties as may be incident thereto as a part of the realty.

Again, when we consider carefully the nature of the property threatened to be condemned by the city in this instance we become forcefully impressed with the inadequacy and inappropriateness of the provisions in Articles 3264 and 3265 for determining the value of such properties. It must be kept in mind that the taking and appropriation here is not merely of land and physical properties, but of everything connected with and constituting the *business* and distributing system of the plaintiff as a subsisting public utility. In fact, what is sought to be taken is more than the several parts of which it consists, towit, real estate, personal property, franchises, easements, contracts, etc., and is a unified and vitalized "going concern." As was aptly remarked by Justice Lurton in the case of City of Omaha v. Omaha Water Company, 218 U. S., 180, 30 Sup. Ct., 615, 54 L. Ed., 991, 48 L. R. A. (N. S.) 1084, involving a somewhat like situation, the compensation is not to be limited to the "value to the bare bones of the plant, its physical properties, such as its lands, its machinery, its water pipes or settling reservoirs, nor to what it would take to reproduce each of its physical features. The value, in equity and justice, must include whatever is contributed by the fact of the connection of the items making a complete and operating plant. The difference between a dead plant and a live one is a real value, and is independent of any franchise to go on, or any mere good will as between such a plant and its customers." In 10 R. C. L., page 146, it is said:

"When the entire plant of a public service corporation, such as a water, gas or electric light company, is taken over for municipal ownership and operation, the company is entitled to be paid the fair market value of its physical property and its franchise, taken together as parts of *one system.*"

In Nichols on Eminent Domain, Volume 1, pages 679 to 681, is found the following illuminating comment:

"A characteristic example of the class of property which cannot be valued by the usual methods is the plant of a public service corporation. Cases have arisen from time to time for over a century in which turnpike roads or toll bridges belonging to private corporations have been taken by eminent domain in order to be established as public highways. So also in more recent years a system for supplying water or artificial light to the people of a designated district, operated by a private corporation, has not infrequently been taken over by the municipality in which it is located and subjected to municipal ownership and operation. In England the street railway or tramway systems have in many cases been taken over by the municipality, and a similar undertaking has frequently been proposed in many American cities. In such a case the public service corporation, the property of which is thus taken for a public use, is entitled to just compensation, which is, as in other cases of the exercise of eminent domain, the fair market value of the property taken, but to ascertain the fair market value of the plant of a public service corporation is no easy matter.

"The judicial valuation of the plants of public service corporations is however required, not only in the case of the taking over of such property by eminent domain and the kindred case of the purchase of such property, either by mutual agreement or by virtue of a provision in the franchise of the company, at a price fixed by arbitration, but for other purposes as well, such as for determining whether the rates fixed by public authority afford a fair return on the property devoted to the public use, for purposes of taxation, and for fixing the capitalization of such a corporation when it is restricted by law, and while there are necessarily some differences in the methods of determining and applying the valuation for each of these purposes, the fundamental principles are essentially the same. Upon this highly specialized subject a vast amount of study has been expended, and conflicting theories have grown up which are found set forth in the writings of scientists and in the reports of public service commissions and of similar bodies as well as in the decisions of the courts. *In fact the whole subject pertains more to the science of civil engineering than to that of the law, and can be discussed only in a general way in this work.*

"When the plant of a public service corporation is taken by eminent domain the corporation is not limited to the value of its physical property, or to the cost of reproducing the same,

but it is entitled to be paid the value of its property and franchises taken together as a going concern and as parts of one system, and in reaching that value there are a number of tests, no one of which is conclusive, but each of which throws some light upon the subject of the investigation."

As tending to show the vastness of the task of undertaking to fix the compensation to be paid a public utility for the taking of its plant and properties, we refer to the Annotation in 47 L. R. A. (N. S.), pages 770 to 800, and to the decision in the case of Kennebec Water District v. City of Waterville, 97 Me., 185, 54 Atl., pages 6 to 21, 60 L. R. A., 856. Usually such a proceeding is conducted by a commission created by the Legislature, with many of its powers specially provided, under instructions issued from time to time by a court. We note from some of the decisions that such a proceeding often requires many months (in one case about three years), and the testimony is principally that of engineering experts and accountants. As indicated in one or more decisions the question of whether or not the rates fixed by public authority afford a fair return is sometimes involved. The general statutes under review contain very meager suggestions as to how the expense of such a proceeding is to be paid.

We call attention to these things for the purpose of demonstrating that the provisions of our statute providing for appoint of three disinterested freeholders, "when real estate is desired for public use," and giving very meager directions for assessing the "actual damages that will accrue to the owner," are wholly inappropriate, inapplicable and insufficient as a means of assessing the compensation to be paid a public utility for the taking of its business and plant as a going concern.

■ But when we look further to the provisions of Article 3268, pertaining to the payment of damages before possession is taken, which article is an essential part of the procedure in any case of eminent domain, we are still more forcefully impressed with the idea that this Chapter as a whole was not designed for a case of this kind. Briefly stated, Article 3268 provides that after the award of the commissioners has been made the condemning party may take possession of the property sought to be condemned by paying to the defendant the amount of the damages awarded, or by depositing same in court, by depositing an amount equal to the award in the court, to be held pending the ascertainment of additional damages, and by filing a bond conditioned for the payment of the costs. It is then pro-

vided that if it be finally determined that the plaintiff has no right to condemn the property in question, it shall be surrendered to the defendant, and the court may ascertain what damages, if any, have been suffered by the defendant on account of the temporary possession by plaintiff; same to be paid out of the award or other money deposited. However, the Forty-first Legislature (4th C. S., 1930, ch. 37) amended Article 3268 by providing that "the State, any county, or municipal corporation shall not be required to deposit bond or the amount equal to the award of damages by the commissioners, as provided in Section 2 hereof." It will thus be seen that as to a municipal corporation it is not required to do more, in order to take possession of the property sought to be condemned, than to pay the sum awarded by the commissioners, regardless of whether or not it may represent the "adequate compensation" required by the Constitution. Under this Article, as thus amended, the City of Fort Worth, after paying the amount awarded by the commissioners, whether great or small, could take possession of the gas system and business of plaintiff, alleged to be worth Twenty Million Dollars, and in the event it was ultimately found that the compensation to be paid plaintiff was in excess of the award of the commissioners, plaintiff would have no security therefor, and would have been deprived of its property in advance of compensation "first made, or secured by deposit of money." In addition, under this statute the City might take possession of the gas system, appropriate or otherwise use it for an indefinite time, and then return same with no security to plaintiff for payment of its damages by reason of depreciation, mismanagement, loss, forfeiture of leases, or otherwise, except the award made by the commissioners, which might be wholly inadequate.

It is not necessary for us to hold that if a public utility's business and system be taken under these provisions the constitutional safeguards would be violated, although it appears very probable such would be true. It is only necessary to hold that on account of the inadequacy, inappropriateness and manifest imperfections of the procedure provided in Chapter 52 of the Revised Statutes, such procedure was not intended to apply to a proceeding of this kind. This seems to be so evident as to require no further discussion. This being true, it follows that there is no procedure set up by general law for ascertaining the just compensation to be paid plaintiff for its property in case of condemnation, and no sufficient provisions made for taking possession of the property before a final

adjudication of the question of compensation. In fact, there are no applicable general laws on the subject.

All doubt concerning the correctness of this conclusion is removed when we look to the general statute conferring the power upon the City to condemn the business and properties of public utilities. While such power is given in general terms in one or more sections of the law, yet the most definite statement is in Section 13 of Article 1175 of the statutes, which article has become a part of the Charter of the City of Fort Worth. That section is as follows:

"To buy, own, construct within or without the city limits and to maintain and operate a system or systems, of gas, or electric lighting plant, telephone, street railway, sewerage plants, fertilizing plants, abattoir, municipal railway terminals, docks, wharfs, ferries, ferry landings, loading and unloading devices and shipping facilities, or any other public service or public utility, and to demand and receive compensation for service furnished for private purpose or otherwise, and to exercise the right of eminent domain as hereinafter provided for the appropriation of lands, rights of way or anything whatsoever that may be proper and necessary to efficiently carry out said objects. Any city shall have the power to condemn the property of any person, firm or corporation now conducting any such business and for the purpose of operating and maintaining any such public utilities and for the purpose of distributing such service throughout the city or any portion thereof; *provided that any city may adopt by its charter any such rules and regulations as it may deem advisable for the acquiring and operation of any such public utilities.*" (Emphasis ours).

The fact that in connection with this particular power the Legislature has provided that the City may adopt by its charter such rules and regulations as it may deem advisable for acquiring public utilities, and has not made a similar provision with reference to other powers, is potent proof that the Legislature thought the general statutes were not sufficient, in the event of an attempted exercise of this particular power. It is further convincing evidence that the Legislature intended to condition the exercise of this power upon the adoption by the City of sufficient and adequate rules and regulations for "acquiring" such utilities. It is admitted that the City of Fort Worth has never made any such provisions in its charter. We think it is true, therefore, that the power given to the City to take and appropriate the business and properties of a public utility lies dormant.

■ It follows, we think, that the threatened attempt to take and appropriate plaintiff's business and properties in the absence of adequate and appropriate machinery for ascertaining the constitutional compensation which plaintiff would be entitled to receive, if permitted to be pursued, would be void; and injunction was the proper remedy for preventing such attempt.

Section 33 of Article 1175 of the general statutes is a part of the Charter of the City of Fort Worth. It provides as follows:

"Whenever any city may determine to acquire any public utility using and occupying its streets, alleys, and avenues as hereinbefore provided, and it shall be necessary to condemn the said public utility, the city may obtain funds for the purpose of acquiring the said public utility and paying the compensation therefor, by issuing bonds, notes or other evidence of indebtedness and shall secure the same by fixing a lien upon the said properties constituting the said public utility so acquired by condemnation or purchase or otherwise; said security shall apply alone to said properties so pledged; and such further regulations may be provided by any charter for the proper financing or raising the revenue necessary for obtaining any public utilities and providing for the fixing of said security."

Plaintiff strongly urges that this provision of the law cannot constitutionally be complied with by the City of Fort Worth. We do not find it necessary to discuss that question. However, plaintiff alleges that no effort had been made to comply with this provision of the law and to obtain the money necessary to pay for its properties prior to the threatened proceeding. We think it sufficient to say that even if the City might constitutionally obtain the large sum of money necessary to pay for plaintiff's properties, in the manner indicated by the statute, certainly the necessary proceedings should be taken in ample time to obtain the money prior to the time when the appropriation was actually made. As it is evident that there must be further legislative action providing adequate and appropriate procedure for condemning properties of the kind here involved, including provisions setting up the mode and manner of ascertaining just compensation, as well as an appropriate method for taking possession pending a final hearing, it is proper to assume that ample provisions will be made in all respects necessary to fully preserve the constitutional right of public utilities when their properties may be desired by municipalities.

There are other questions raised, but as we have sufficiently shown that the trial court erred in sustaining a general demurrer, it is not necessary to discuss them here. We remark, however, that it seems to be well settled that the Legislature may authorize a municipality to take an existing plant of a public utility in order that same may be owned and operated by the public itself rather than by a private corporation. Nichols on Eminent Domtain, Volume 2, pages 978 and 979.

The judgments of the Court of Civil Appeals and of the trial court are reversed and the cause is remanded.

Opinion adopted by the Supreme Court November 25, 1936. Rehearing overruled January 6, 1937.