

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00343-CV

---

CITY OF BLUE MOUND, TEXAS                                    APPELLANT

V.

SOUTHWEST WATER COMPANY                                     APPELLEES
AND MONARCH UTILITIES I, LP

----------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 348-257664-12

----------

## OPINION

----------

## I. INTRODUCTION

The primary issue that we address in this summary judgment appeal is whether Appellant City of Blue Mound, Texas, may condemn in district court the Blue Mound Water and Wastewater System—a water and wastewater system owned and operated by Appellee Monarch Utilities I, LP, a subsidiary of Appellee Southwest Water Company that is currently serving residents of the City—so that

the City may own and operate it.  Because we hold that no statutory procedures exist permitting a municipality's condemnation in a Texas district court of a privately-owned public utility as a going concern, we will affirm the trial court's summary judgments for Appellees.

## II. BACKGROUND

As the owner and operator of Blue Mound Water and Wastewater System, Monarch holds certificates of convenience and necessity (CCNs) numbers 12983 and 20899 that were issued by the Texas Commission on Environmental Quality (TCEQ), permitting Monarch to serve its approximately 800 water and 800 wastewater connections with the City.

The City filed condemnation proceedings for the acquisition of the real property and fixtures of the Blue Mound Water and Wastewater System.  The City's condemnation petition alleged that the City sought to exercise its powers of eminent domain under Texas Local Government Code section 251.001 and Texas Property Code chapter 21 to acquire Monarch's entire water and wastewater system,

> including without limitation the real property, easements, if any, including sanitary control easements, utility easements and access easements, any and all improvements and fixtures affixed to the land, including buildings, a water well ("Water Well No. 1"), water tower and water tanks located at 1601 Bell Avenue and buildings, water wells ("Water Well No. 2" and "Water Well No. 3") and water tanks located at 1825 Fagan Drive, distribution lines, including water and sewer lines and water and sewer mains, fixed equipment, fire hydrants and generators, and water rights more particularly described for illustrative purposes in the [attachments to its "Third Amended Original Petition for Condemnation"]; provided, in no event

2

does the City intend to acquire personal property. The petition alleged that the City sought to condemn and acquire the Blue Mound Water and Wastewater System with all rights of possession and access, free and clear of any encumbrances or restrictions which may burden the utility system so that the City may own and operate its own water and wastewater utility system that will serve residential and commercial customers in Blue Mound.

Three special commissioners were appointed to assess "the value of the property which is the subject matter of this proceeding." They issued an award of $2,748,000 "for land more specifically described in Plaintiff's Original Petition for Condemnation, according to the rules of damages set forth in Section 21.042 of Texas Property Code." Appellees objected to the special commissioners' award, arguing that the City does not have authority, and that the district court does not have jurisdiction, to take Appellees' property and that the taking is precluded under Texas law.

Monarch filed a combined no-evidence and traditional motion for summary judgment asserting four grounds for summary judgment. Monarch's first ground for summary judgment asserted that the City possesses no authority to condemn an entire, ongoing utility business under local government code section 251.001—the statutory authority relied upon by the City for its attempted condemnation. Monarch also moved for summary judgment on the grounds that the legislature had passed a comprehensive system for the taking, i.e., a transfer of ownership, of a certificated utility via chapter 13 of the water code and that

3

such a proceeding must be brought in a proceeding before the TCEQ, not in district court. Monarch's other grounds for summary judgment asserted that the City was attempting through its condemnation action to regulate water rates and to "work an end-run" around the established and preemptive procedures in Texas for utility rate cases and that the City's condemnation was not for a public purpose because the Blue Mound Water and Wastewater System was already being used for the very same purpose that the City wanted to use it for—the provision of water and wastewater services to the citizens of the City.

The City filed a response and a plea in abatement. The trial court granted the City's plea in abatement and abated the case while the City attempted to obtain legislation, HB 1160, purporting to amend the local government code by providing procedures for the TCEQ to transfer Monarch's CCNs to the City so that the City could take over the operation of the Blue Mound Water and Wastewater System.[1]

---

[1]The City denied that it needed a CCN to operate the water and wastewater system but argued that HB 1160, if passed, would provide clear statutory language and guidance as to the timing and conditions of the transfer of Monarch's CCN to the City. The bill, if signed into law, would have added section 552.024 to the Texas Local Government Code. Proposed section 552.024, which would have applied only to municipalities with a population of less than 2,500 and that met other conditions, would have required the TCEQ to transfer a CCN for water and sewer service from a public utility to a municipality if the municipality instituted a condemnation proceeding under chapter 21 of the property code to acquire the property of the public utility's water and sewer system and the municipality had paid to the public utility the fair market value for the taking of the real property, as set by agreement or as ordered by a court judgment.

4

After the Governor vetoed the bill,[2] the trial court reinstated the condemnation suit and granted summary judgment for Monarch. Southwest Water Company subsequently filed a motion for summary judgment mirroring Monarch's motion, and the trial court granted it. The trial court's orders granting Appellees' motions for summary judgment do not state the grounds on which summary judgment was granted. The trial court then signed a judgment finally dismissing the case as to both Appellees. The City perfected this appeal.

The City raises four issues on appeal that track Appellees' four grounds for summary judgment, attacking each ground on which the summary judgments could have been granted.

## III. STANDARD OF REVIEW

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We will affirm a traditional summary judgment only if the movant established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on the grounds expressly set forth in the motion. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). Because the parties here agree that there are no genuine issues of material fact, we review only whether Appellees were entitled to judgment as a

---

[2]The Governor stated in his veto that he disapproved of HB 1160 because it "allows a city to condemn the real property of a water or sewer utility, making no provision for the value of lost business. At a time when infrastructure is a focus for our growing state, this bill would provide a disincentive for development by private utilities."

matter of law.[3] When the trial court's order does not state the ground on which the trial court granted summary judgment, we must affirm the trial court's judgment if any ground for summary judgment is meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995).

## IV. THE CITY'S TAKING IS NOT AUTHORIZED IN DISTRICT COURT

In its first issue, the City asserts that its proposed taking of Monarch's water and wastewater system through its condemnation suit in district court is authorized by Texas condemnation law so that the trial court could not have granted summary judgment on the ground that it was not.

### A. The City is Taking the Blue Mound Water and Wastewater System as a Going Concern

Before analyzing whether Texas law provides for the taking attempted by the City, we must first determine exactly what the City is seeking to condemn. The City argues that it seeks only condemnation of real property and the fixtures attached to that property, not the condemnation of the entire Blue Mound Water and Wastewater System as an ongoing business. Appellees, on the other hand, argue that the City is attempting to condemn the entire Blue Mound Water and Wastewater System as an ongoing business solely to effectuate a change in ownership of the system so that the City, instead of Monarch, may own and operate the system.

---

[3]Although Appellees filed both a no-evidence and a traditional motion for summary judgment, the parties agree on appeal that all grounds for summary judgment asserted by Appellees present questions of law.

6

As set forth and quoted above, the City's condemnation petition pleaded that the City sought to acquire the entire Blue Mound Water and Wastewater System. The City pleaded that by its condemnation action it sought to acquire the entire Blue Mound Water and Wastewater System *including without limitation* not only real property but also numerous fixtures, easements, buildings, water rights, and water and sewer lines and mains.

Additionally, the City provided as summary judgment evidence a resolution approved by the City's city council, Resolution No. 10–11, authorizing the filing of eminent domain proceedings to acquire the water and wastewater utility company, not the real property. The resolution provides in pertinent part:

> **A RESOLUTION OF THE CITY OF BLUE MOUND, TEXAS AUTHORIZING THE FILING OF EMINENT DOMAIN PROCEEDINGS FOR THE PUBLIC PURPOSE OF ACQUIRING THE LOCAL WATER AND WASTEWATER UTILITY COMPANY SERVING THE CITY, OR FOR OTHER PUBLIC PURPOSES PERMITTED BY LAW; AND PROVIDING AN EFFECTIVE DATE.**
>
> **WHEREAS**, the City of Blue Mound, Texas (the "City"), is a Type A general-law municipality located in Tarrant County, created in accordance with the provisions of Chapter 6 of the Local Government Code and operating pursuant to the enabling legislation of the State of Texas; and
>
> **WHEREAS**, the City is currently served with water and wastewater by a privately owned utility company (the "Utility"); and
>
> **WHEREAS**, *the City desires to acquire the complete Utility, including without limitation the real property, buildings, easements, wells, pipes and transmission lines, meters, storage tanks, equipment, water rights and certificates of convenience and necessity*

7

*("CCN's"), so that the City owns and operates its own water and wastewater utility systems (the "Project")*; and

**WHEREAS**, the Utility appears to have been originally installed or constructed by Saginaw Park Utility Company, and was subsequently purchased by Tecon Water Company, then purchased by Monarch Water Utilities, Southwest Water Company, and J.P. Morgan and Water Asset Management; and

**WHEREAS**, the City and the owners of the Utility have been unable to reach an agreement on the acquisition of the Utility by the City; . . . . [Emphasis added.]

The resolution authorizes the City to hire attorneys to seek condemnation of the Blue Mound Water and Wastewater System. Thus, the City's pleading, as well as the summary judgment evidence, establishes that the City's condemnation action sought to acquire the complete, entire Blue Mound Water and Wastewater System as a going concern "so that the City owns and operates its own water and wastewater utility systems."

The City's efforts to condemn the complete, entire Blue Mound Water and Wastewater System for the purpose of transferring ownership and operation of the utility to the City is an attempt to effectuate the taking of a going concern. *See Kimball Laundry Co. v. United States*, 338 U.S. 1, 12–15, 69 S. Ct. 1434, 1440–42 (1949) (holding that U.S. Army's taking of laundry facility for its own use for over three years constituted taking of a going concern); *City of Omaha v. Omaha Water Co.*, 218 U.S. 180, 203, 30 S. Ct. 615, 620 (1910) (holding that

8

city's purchase of water utility for city's own use entitled owners to compensation for going-concern value).[4]

## B. The Taking of the Blue Mound Water and Wastewater System as a Going Concern Requires that Appellees be Compensated for Going-Concern Value

### 1. The general rule: the taking of a going concern is not compensable

A condemnation action in Texas is an in rem proceeding. *See AMV-HOU, Ltd. v. Capital Metro. Transp. Auth.*, 262 S.W.3d 574, 585 (Tex. App.—Austin 2008, no pet.); *State v. Rogers*, 772 S.W.2d 559, 562 (Tex. App.—Amarillo 1989, writ denied). A proceeding in rem is essentially a proceeding to determine rights in a specific thing or in specific property, against all the world, equally binding on everyone; it is a proceeding that takes no cognizance of an owner or person with a beneficial interest but is against the thing or property itself directly and has for its object the disposition of the property, without reference to the title of individual claimants. 1 Am. Jur. 2d *Actions* § 34 (1994).[5] Thus, Texas's condemnation statutes set forth procedures to compensate those with interests in condemned

---

[4]To the extent the City attempts to define what it is condemning by its intent—that is, the City *intends* to condemn only property, so it *is* condemning only property—this argument fails. By condemning the Blue Mound Water and Wastewater System for the purpose of transferring ownership and operation to the City, the City is in fact condemning and taking the utility as a going concern. *See Kimball Laundry Co.*, 338 U.S. at 12–15, 69 S. Ct. at 1440–42.

[5]An in rem action is based on the court's power over property within its territory; when the jurisdiction of a court is based on the court's authority over the defendant's person, the action is "in personam." *See, e.g., Shaffer v. Heitner*, 433 U.S. 186, 199, 97 S. Ct. 2569, 2577 (1977).

property for the fair market value of the property that is condemned and for damages occasioned to any remainder of the tract by reason of the taking. *See, e.g.*, *State v. Meyer*, 403 S.W.2d 366, 371 (Tex. 1966); *Reeves v. City of Dallas*, 195 S.W.2d 575, 584 (Tex. Civ. App.—Dallas 1946, writ ref'd n.r.e.); *see also* Tex. Prop. Code Ann. § 21.042 (West 2014).

Damage, if any, to the going concern of a business on the condemned real property is generally not compensable because such damages are related to the business conducted on the property and not to the real property taken. *Rogers*, 772 S.W.2d at 572. That is, the going-concern element of the property owner's business is usually not taken by the condemnation of real property on which the business is located because the property owner is free to move his business to another location. *Kimball Laundry Co.*, 338 U.S. at 11–12, 69 S. Ct. at 1440–42. So the general rule is that the taking by the government of a fee simple in real property does not entitle a property owner to compensation for loss of the value of his business as a going concern. *Id.*; *AMV-HOU, Ltd.*, 262 S.W.3d at 585 (holding city's taking of fee title to property plaintiff had leased for adult video business did not create cause of action for plaintiff to sue for loss of business damages); *Rogers*, 772 S.W.2d at 562 (holding state's taking of fee title to property owned by plaintiffs and utilized for auto parts business did not entitle plaintiffs to award for loss of going-concern damages).

## 2.  Condemnation of privately-owned public utility systems for operation by the sovereign is an exception to the general rule

The United States Supreme Court has recognized, however, that utility systems are an exception to the above-stated general rule.  *Kimball Laundry Co.*, 338 U.S. at 12–15, 69 S. Ct. at 1440–42 (discussing *City of Omaha*, 218 U.S. at 203, 30 S. Ct. at 620).  The Supreme Court has held that when a governmental entity condemns an entire utility system for the purpose of taking it over and continuing its operation by the governmental entity, then the utility owner is entitled to be compensated for loss of the going-concern value of the utility system.  *City of Omaha*, 218 U.S. at 203, 30 S. Ct. at 620; *accord Kimball Laundry Co.*, 338 U.S. at 12–15, 69 S. Ct. at 1440–42.  After setting forth the general rule—that the taking of real property typically does not entitle the owner to compensation for going-concern value because the owner may simply move the business to another location—the Supreme Court explained the utility-systems exception to the general rule:

> The situation is otherwise, however, when the Government has condemned business property with the intention of carrying on the business, as where public-utility property has been taken over for continued operation by a governmental authority.  If, in such case, the taker acquires going-concern value, it must pay for it.  Since a utility cannot ordinarily be operated profitably except as a monopoly, investment by the former owner of the utility in duplicating the condemned facilities could have no prospect of a profitable return.  The taker has thus in effect assured itself of freedom from the former owner's competition.  The owner retains nothing of the going-concern value that it formerly possessed; so far as control of that value is concerned, the taker fully occupies the owner's shoes.
>
> . . . .

11

The rationale of the public-utility cases, as opposed to those in which circumstances have brought about a diminution of going-concern value although the owner remained free to transfer it, must therefore be that an exercise of the power of eminent domain which has the inevitable effect of depriving the owner of the going-concern value of his business is a compensable "taking" of property.

*Kimball Laundry Co.*, 338 U.S. at 12–13, 69 S. Ct. at 1441–42 (citations omitted).

In other words, because utilities usually operate as a monopoly, after condemnation, a privately owned utility company cannot simply move to another location and reopen its utility business on a different parcel of real property. Therefore, when in a public-utility-taking case, through the exercise of eminent domain the government takes and continues to operate a public-utility, the taking has the inevitable effect of depriving the owner of the going-concern value of his business; a compensable going-concern taking has occurred, and the owner must be compensated. *Id.*;[6] a*ccord Lone Star Gas Co. v. City of Fort Worth*, 98 S.W.2d 799, 799–806 (Tex. 1936) (recognizing that city's proposed taking of

---

[6]We note here that we disagree with the analysis set forth in *AMV-HOU, Ltd.* of the *Kimball Laundry Co.* case. 262 S.W.3d at 584–85 & n. 6. The opinion in *AMV-HOU, Ltd.* distinguishes the *Kimball Laundry Co.* case based on the fact that the U.S. Army's taking of the laundry was temporary (as opposed to permanent) and opines that while loss of business damages are recoverable when a taking is temporary, they are not recoverable when fee title is taken. *Id.* As set forth in the quote above from the *Kimball Laundry Co.* case, the distinctive feature of a taking that entitles the property owner to an award of going-concern value is that the condemnor takes over the business of the property owner to run it for itself on the real property it condemns. 338 U.S. at 12, 69 S. Ct. at 1441 (explaining that "when the Government has condemned business property with the intention of carrying on the business, as where public-utility property has been taken over for continued operation by a governmental authority. If, in such case, the taker acquires going-concern value, it must pay for it").

12

utility system for municipal ownership and operation would constitute the taking of "a unified and vitalized 'going concern'" requiring compensation for that value).

## C.  The Local Government Code and the Property Code
## Neither Authorize Condemnation in District Court of the
## Blue Mound Water and Wastewater as a Going Concern Nor Provide a
## Mechanism for Assessment of Going-Concern Value

The City's condemnation petition asserted that its taking of the Blue Mound Water and Wastewater System is authorized by local government code section 251.001 and property code chapter 21.  Appellees moved for summary judgment on the ground that neither of these statutes authorized the City's taking of the going concern of a privately-owned and operated utility system.  On appeal, the City argues that local government code sections 273.001 and 552.001 also authorize its condemnation of the Blue Mound Water and Wastewater System.

### 1.  Standard of Review Applied
### to Statutes Granting Eminent Domain Powers

The Texas constitution limits the inherent power of eminent domain by imposing the requirements that the State take property only for "public use" and pay "adequate compensation" whenever doing so.  Tex. Const. art. I, § 17; *see City of Austin v. Whittington*, 384 S.W.3d 766, 772 (Tex. 2012); *McInnis v. Brown Cnty. Water Improvement Dist. No. 1*, 41 S.W.2d 741, 744 (Tex. Civ. App.—Austin 1931, writ ref'd).  Consistent with these limitations, when the State—through the legislature—delegates general eminent domain power to municipalities, it may impose limitations on the grant of power.  *See* Tex. Loc. Gov't Code Ann. § 51.001(a) (West 2013) (setting forth requirements for exercise

13

of eminent domain by municipality); *Whittington*, 384 S.W.3d at 772 (recognizing the public use requirement and the necessity requirement legislatively imposed on municipalities via local government code section 251.001). Thus, the legislative grant of eminent-domain power is strictly construed in two regards. *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d 192, 198 (Tex. 2012). First, to establish its right to condemnation, the condemnor must show strict compliance with the law authorizing private property to be taken for public use. *Id.* (citing *State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 640 (Tex. 2001)). Second, in instances of doubt as to the scope of the power, the statute granting such power is "strictly construed in favor of the landowner and against those corporations and arms of the State vested therewith." *Id.* By the rule of strict construction, "it is not meant that the statute shall be stintingly or even narrowly construed, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used." *Jennings v. WallBuilder Presentations, Inc.*, 378 S.W.3d 519, 523 (Tex. App.—Fort Worth 2012, pet. denied) (quoting Norman J. Singer & J.D. Shambie Singer, 3 Statutes and Statutory Construction, § 58:2, at 110 (7th ed. 2008)).

## 2. The Statutes Relied Upon by the City

### a. Local Government Code Section 251.001

Texas Local Government Code section 251.001 is titled "Right of Eminent Domain" and provides:

14

(a) When the governing body of a municipality considers it necessary, the municipality may exercise the right of eminent domain for a public use to acquire public or private property, whether located inside or outside the municipality, for any of the following uses:

> (1) the providing, enlarging, or improving a . . . water works system, including reservoirs, other water supply sources, watersheds, and water storage, drainage, treatment, distribution, transmission, and emptying facilities; sewage system including sewage collection, drainage, treatment, disposal, and emptying facilities;

> . . . .

(b) A municipality condemning land under this section may take a fee simple title to the property if the governing body expresses the intention to do so.

Tex. Loc. Gov't Code Ann. § 251.001 (West Supp. 2014).

### b. Local Government Code Section 273.001

Texas Local Government Code section 273.001 is titled "Acquisition of

Property; Exercise of Police Power" and provides, in pertinent part:

(a) A municipality may, in accordance with this chapter, acquire property separately or jointly with another municipality or other governmental entity by gift, dedication, or purchase, with or without condemnation.

> . . . .

(c) The property must be used for the following public purposes:

> . . . .

> (3) The extension, improvement, and enlargement of its water system, including riparian rights, water supply reservoirs, standpipes, watersheds, and dams;

15

(4) The laying, building, maintenance, and construction of water mains;

(5) The laying, erection, establishment, and maintenance of necessary appurtenances or facilities that will furnish to the inhabitants of the municipality an abundant supply of wholesome water;

(6) Sewage plants and systems;

(7) Rights of way for water and sewer lines; . . . .

*Id.* § 273.001(a), (c)(3)–(7) (West 2005).

### c. Texas Local Government Code Section 552.001

Texas Local Government Code section 552.001 is titled "Municipal Utility Systems; General Powers" and provides in pertinent part:

(a) In this section, "utility system" means a water, sewer, gas, or electricity system.

(b) A municipality may purchase, construct, or operate a utility system inside or outside the municipal boundaries and may regulate the system in a manner that protects the interests of the municipality.

*Id.* § 552.001 (West Supp. 2014).

### d. Texas Property Code Chapter 21

Texas Property Code chapter 21 is titled "Eminent Domain," and the exercise of the eminent domain authority in all cases is governed by sections 21.012 through 21.016.   *See* Tex. Prop. Code Ann. § 21.011 (West 2014). Texas Property Code chapter 21 does not specifically grant powers of eminent domain; it provides statutory procedures to be followed in a condemnation proceeding when the exercise of eminent domain power is authorized by another

16

statute or by the constitution. *See Occidental Chem. Corp. v. ETC NGL Transp., LLC*, 425 S.W.3d 354, 359 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (recognizing that generally eminent domain refers to the power to take private property for public use while the process of exercising that power is referred to as condemnation or expropriation).

### 3. Case Law Holds that Texas's Condemnation Statutes do not Authorize the Taking of a Utility as Going Concern in District Court

Two Texas cases exist involving the attempted condemnation of a privately-owned public utility for the purpose of transferring ownership and operation of the utility to the government. *See Lone Star Gas Co.*, 98 S.W.2d at 799–806; *City of Houston v. S. Water Corp.*, 678 S.W.2d 570, 571–72 (Tex. App.—Houston [14th Dist.] 1984, writ dism'd). In *Lone Star Gas Co.*, the Texas Supreme Court examined the Texas statutory condemnation scheme. 98 S.W.2d at 799–806.[7] The City of Fort Worth was attempting to condemn an entire, existing, privately-owned gas utility for the purpose of converting it to a municipally-owned utility operated by the city. *Id.* The court recognized that the city was attempting to take the going-concern value of the utility and recognized

---

[7]Although *Lone Star Gas Co.* was written by the Texas Commission of Appeals of the Texas Supreme Court, the opinion was adopted by the Texas Supreme Court, giving it the same precedential value as an opinion from that court. *See The Greenbook: Texas Rules of Form* 5.2.2 (Texas Law Review Ass'n ed., 12th ed. 2010) (stating that "[i]f the Texas Supreme Court adopted the entire opinion of the Commission, *the case must be cited as though it were a decision of the Texas Supreme Court*") (emphasis in original); *Lone Star Gas Co.*, 98 S.W.2d at 806 (stating that the opinion was adopted by the Texas Supreme Court).

17

that compensation for this aspect of the taking was required. *Id.* at 803 (explaining that utility owner "is entitled to be paid the value of its property and franchises taken together as a going concern and as parts of one system"). Because a mechanism to compensate the utility owner for the taking of the going-concern aspect of the utility was required under the Texas constitution but existed neither in Texas statutes nor in the city's charter,[8] condemnation was not authorized. *Id.*

The *Lone Star Gas Co.* court explained that the computation of going-concern value of an existing, privately-owned and operated public utility was a difficult task that was left unaddressed by existing Texas statutes:

> As tending to show the vastness of the task of undertaking to fix the compensation to be paid a public utility for the taking of its plan and properties, we refer to [several annotations]. Usually such a proceeding is conducted by a commission created by the Legislature, with many of its powers specifically provided, under instructions issued from time to time by a court. We note from some of the decisions that such a proceeding often requires many months (in one case about three years), and the testimony is principally that of engineering experts and accountants. As indicated in one or more decisions, the question of whether or not the rates fixed by public authority afford a fair return is sometimes involved. The general statutes under review [Texas's condemnation statutes] contain very meager suggestions as to how the expense of such a proceeding is to be paid.
>
> We call attention to these things for the purpose of demonstrating that the provisions of our statute, providing for appointment of three disinterested freeholders, "when real estate is desired for public use" and giving very meager directions of

_____

[8]The City here stipulated that it did not have a city charter, so we do not further discuss this aspect of the *Lone Star Gas Co.* case.

18

> assessing the "actual damages that will accrue to the owner," are wholly inappropriate, inapplicable, and insufficient as a means of assessing the compensation to be paid a public utility for the taking of its business and plant as a going concern.

*Id.* at 804 (citations omitted). The court also noted that an essential component of the eminent domain procedure as set forth in Texas's condemnation statutes requires the condemning party to pay the amount of damages awarded by the special commissioners to the property owner or into the registry of the court before taking possession of the property during the pendency of litigation. *Id.* Because the municipality could take possession of the entire utility system by paying only the amount awarded by the special commissioners, "regardless of whether or not it may represent the 'adequate compensation' required by the Constitution," the *Lone Star Gas Co.* court was "still more forcefully impressed with the idea that this chapter as a whole was not designed for a case of this kind." *Id.*

Following the holding in *Lone Star Gas Co.* that Texas condemnation statutes do not provide a mechanism for compensating a condemned utility for the value of its business as a going concern, the Houston Fourteenth Court of Appeals in *City of Houston v. Southern Water Corporation* upheld an injunction prohibiting the city from condemning a privately-owned sewer and water system as a going concern. 678 S.W.2d at 571–72.

The City contends that *Lone Star Gas Co.* was wrongly decided and points to two more recent cases: *Barshop v. Medina County Underground Water*

*Conservation District*[9] and *Texas Building Owners and Managers Association, Inc. v. Public Utility Commission of Texas*.[10]   Neither of these cases apply to the City's attempted condemnation in district court of the Blue Mound Water and Wastewater System as a going concern.

*Barshop* involved a declaratory judgment action by landowners seeking to declare the Edwards Aquifer Act facially unconstitutional.  925 S.W.2d at 623. The supreme court held that the landowners had not satisfied the heavy burden of establishing that the Act, by its terms, operated unconstitutionally under all circumstances by depriving them of their property rights in ground water without just compensation.  *Id.* at 628–31.  The supreme court held:

> Assuming without deciding that Plaintiffs possess a vested property right in the water beneath their land, the State still can take the property for public use as long as adequate compensation is provided.  The Act expressly provides that the Legislature "intends that just compensation be paid if implementation of [the Act] causes a taking of private property or the impairment of a contract in contravention of the Texas or federal constitution.  Based on this provision in the Act, we must assume that the Legislature intends to compensate Plaintiffs for any taking that occurs.  *As long as compensation is provided, the Act does not violate article I, section 17* [of the Texas constitution].

*Id*. at 630–31 (emphasis added and citation omitted).  Thus, the supreme court's holding in *Barshop* actually reaffirms the prior holding in *Lone Star Gas Co.*—that is, the Texas constitution requires that a taking for public use must be

---

[9]925 S.W.2d 618 (Tex. 1996).

[10]110 S.W.3d 524 (Tex. App.—Austin 2003, pet. denied).

20

compensated, and if what is taken is not compensable under Texas's general condemnation statues, then some specific statute or mechanism must exist authorizing compensation for that taking. *See id.* In *Barshop*, although Texas's general condemnation statutes did not provide a mechanism to compensate the plaintiffs for a taking of their vested rights in ground water, the Edwards Aquifer Act contained a specific provision authorizing just compensation for any taking caused by the implementation of the Act. *Id.* Because this specific provision of the Act provided a mechanism for compensation, the Act was not facially unconstitutional*. Id.*

Texas Building Owners likewise involved a declaratory judgment action brought by the Texas Building Owners and Managers Association to declare that portions of the Building Access Statutes of the Public Utility Regulatory Act were facially unconstitutional in part because the statutes caused a taking of the building owner's property without providing for just compensation. 110 S.W.3d at 527–28. The rules promulgated by the Public Utility Commission at the legislature's directive to implement the Building Access Statutes required the property owner and the requesting carrier to negotiate reasonable compensation due the property owner for the installation of telecommunications equipment. *Id.* at 530. If the owner and carrier failed to reach a negotiated agreement, either party could petition the Public Utility Commission to resolve the dispute and to determine compensation. *Id.* The rules also set forth the procedure to be utilized by the Commission in determining compensation. *Id.* The Austin Court of

21

Appeals thus held that the Building Access Statutes (by providing for the adoption of detailed rules setting forth a process for obtaining compensation) made adequate provision for the obtaining of compensation and thus were not facially unconstitutional. *Id.* at 537. The Court rejected the contention asserted by the plaintiffs that the method for determining compensation must be set forth in the Building Access Statutes themselves instead of in the rules and likewise rejected the plaintiffs' contention that the holding in *Lone Star Gas Co.* required this. *Id.* Thus, the court's holding in *Texas Building Owners* also reaffirms the holding in *Lone Star Gas Co.*—the Texas constitution requires that a taking for public use be compensated, and if what is taken is not compensable under the general Texas condemnation statues, then a specific statute or some other mechanism must exist authorizing compensation for that taking. *See id.* Because in *Texas Building Owners* the rules promulgated by the Public Utility Commission via a provision in the Building Access Statues provided a mechanism for compensation, the Building Access Statues were not facially unconstitutional*. Id.*

### 4. Analysis

Looking to the plain language of each of the statutes set forth above and strictly construing them—as we must in this instance of doubt as to the eminent domain power of the City—and excluding from their operation powers not clearly within the scope of the language used, none of them grant eminent domain authority to the City to condemn the entire Blue Mound Water and Wastewater

22

System as a going concern. Local government code section 251.001 authorizes a municipality to condemn "public or private property" and to take a fee simple title to the "property." Tex. Loc. Gov't Code Ann. § 251.001(a)(1), (b). Local government code section 273.001 authorizes a municipality to acquire property, provides that the property must be acquired for public purposes, and defines various uses as public purposes. *Id.* § 273.001(a), (c)(3)–(7) (West 2005). Local government code section 552.001 provides that a municipality may purchase, construct, or operate a utility system inside or outside the municipal boundaries and may regulate the system in a manner that protects the interest of the municipality. *Id.* § 552.001. None of these statutes authorize the condemnation of an existing public utility as a going concern; they authorize the taking of property. *Cf.* Ariz. Rev. Stat. Ann. § 9-518B (2013) (West) (statute requiring municipality that condemns the plant and property of a utility to pay compensation "which shall include the fair and equitable value of such plant and property, including its value as a going concern"). None of these statutes from the local government code provide a mechanism or method for compensating a utility owner for the value of the going concern taken.[11] *See Lone Star Gas Co.*, 98 S.W.2d at 803; *City of Houston*, 678 S.W.2d at 571–72; *see also* Kashman,

---

[11]Recognizing that the statutes it relied upon for its condemnation authority—section 251.001 of the Texas Local Government Code and chapter 21 of the Texas Property Code—provide no mechanism to assess or award going-concern value, the City suggests that the valuation of damages here be done in a manner similar to the scheme for valuation set forth in Texas Water Code section 13.255. *See* Tex. Water Code Ann. § 13.255 (West Supp. 2014).

*Going-Concern Value of a Public Utility in Condemnation by a Municipality*, 6 Ariz. L. Rev. 92, 92–100 (1964) (discussing eight possible methods of calculating "value as a going concern" damages that are required under Arizona condemnation statute applicable to takings of utilities).

Although Texas's general condemnation statutes have been amended and recodified since the *Lone Star Gas Co.* opinion issued in 1936, no statutory provision has been added authorizing the award of going concern value in an appropriate condemnation case.  *See* Act of Mar. 7, 1934, 43rd Leg., 2d C.S., ch. 37, 1934 Tex. Gen Laws 89, 89–90 (amended 1983) (current version at Tex. Prop. Code Ann. § 21.011 (West 2014)); Act effective Apr. 2, 1921, 37th Leg., R.S., ch. 87, 1921 Tex. Gen. Laws 169, 169–70 (amended 1963) (current version at Tex. Prop. Code Ann. § 21.019 (West 2014)); *cf.* Tex. Prop. Code Ann. § 21.0421 (West 2014) (specifically authorizing special commissioners to award damages for market value of ground water in addition to market value of real property and setting forth factors for consideration in making such an award). The provisions of our current general condemnation statutes continue to provide, as they did at the time of the *Lone Star Gas Co.* opinion, for the appointment of three disinterested freeholders to award the local market value of the property that is the subject matter of this proceeding.  *See* Tex. Prop. Code Ann. § 21.042.  Thus, the very meager, if not nonexistent, directions provided for assessing damages to a utility owner are just as "wholly inappropriate, inapplicable, and insufficient as a means of assessing the compensation to be

24

paid a public utility for the taking of its business and plant as a going concern" now as when *Lone Star Gas Co.* was decided. 98 S.W.2d at 804. Additionally, the provisions of our current general condemnation statutes continue to provide, as they did at the time of the *Lone Star Gas Co.* opinion, that the condemning party may take possession of the condemned entire utility system as a going concern pending further litigation by simply paying the amount of the special commissioners' award to the utility's owner or into the registry of the court. *See* Tex. Prop. Code Ann. § 21.021 (West 2014). Because under Texas's condemnation statutes the City may take possession of the entire Blue Mound Water and Wastewater system by paying to Appellees only the amount awarded by the special commissioners, "regardless of whether or not it may represent the 'adequate compensation' required by the Constitution" and in spite of United States Supreme Court authority requiring the City to pay Appellees going-concern value that is not encompassed within a special commissioners' award, like the *Lone Star Gas Co.* court, we are "still more forcefully impressed with the idea that this chapter as a whole was not designed for a case of this kind." 98 S.W.2d at 804.

Lone Star Gas Co. has not been overruled, and the cases cited by the City as impinging upon the holding in *Lone Star Gas Co.* actually support its holding, as set forth above. *See Barshop*, 925 S.W.2d at 630–31; *Tex. Bldg. Owners*, 110 S.W.3d at 537. In short, *Lone Star Gas Co.* remains binding precedent applicable to the present case. 98 S.W.2d at 804.

25

Based on the United States Supreme Court's pronouncement that condemnation of an entire utility system for operation by the sovereign constitutes the taking of the utility as a going concern and requires compensation for going-concern value, and because most states' general condemnation statues authorize only in rem proceedings that lack a mechanism to provide for an award of going-concern value, condemnation of utility systems as going concerns are typically premised on a specific statute, ordinance, or city charter provision providing a method of compensation for the "value as a going concern" element of the taking that must be awarded in such cases. *See* Ariz. Rev. Stat. Ann. § 9-518B (statute requiring municipality that condemns the plant and property of a utility to pay compensation "which shall include the fair and equitable value of such plant and property, including its value as a going concern"); *City of Omaha*, 218 U.S. at 191, 30 S. Ct. at 616 (ordinance provided for compensation for value of utility, including going-concern value); *Pennichuck Corp. v. City of Nashua*, 886 A.2d 1014, 1017 (N.H. 2005) (discussing statutory procedures for condemnation of privately-operated utility for operation by the city and explaining that if parties could not reach an agreement on price, then the Public Utilities Commission determined the amount of just compensation and damages); *see also Lone Star Gas Co.*, 98 S.W.2d at 799–806 (refusing to permit condemnation of utility because no statute or city charter provision existed providing for compensation for going concern value); *cf. Mazza v. Agency of Transp.*, 716 A.2d 817, 819 (Vt. 1998) (discussing Vermont general

condemnation statute that specifically authorizes business loss as an item of damage in a condemnation proceeding).

Appellees contend that in light of the legislature's creation of the TCEQ and the enactment of chapter 13 of the Texas Water Code, the City's attempt to take the Blue Mound Water and Wastewater System and Monarch's CCN's should proceed before the TCEQ or the Public Utility Commission of Texas. *See* Tex. Water Code Ann. § 13.242(a) (West Supp. 2014). The stated purpose of chapter 13 of the water code is to "establish a comprehensive regulatory system that is adequate to the task of regulating retail public utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the retail public utilities." *Id.* § 13.001(c) (West 2008). Under the water code, the Public Utility Commission of Texas "may regulate and supervise the business of each water and sewer utility within its jurisdiction," the TCEQ "may regulate water and sewer utilities within its jurisdiction to ensure safe drinking water and environmental protection," and the Public Utility Commission of Texas and the TCEQ "may do all things, whether specifically designated in this chapter or implied in this chapter, necessary and convenient to the exercise of these powers and jurisdiction." *Id.* § 13.041(a) (West Supp. 2014). The Public Utility Commission of Texas "shall adopt and enforce rules reasonably required in the exercise of powers and jurisdiction of each agency, including rules governing practice and procedure before [the TCEQ and the Public Utility Commission of

27

Texas]." *Id.* § 13.041(b).[12]  The City argues that no specific provision of the water code governs its attempted condemnation of the Blue Mound Water and Wastewater System and that the water code therefore does not apply.[13] Because Appellees moved for summary judgment on the ground that existing Texas condemnation statutes do not authorize condemnation of the Blue Mound Water and Wastewater System as a going concern, we need not and do not address whether the City may proceed with its exercise of eminent domain powers before the TCEQ and/or the Public Utility Commission of Texas. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) (holding that when the summary judgment does not state the ground on which it is granted, the appellate court must affirm the summary judgment if any one of the movant's theories has merit); *Harwell*, 896 S.W.2d at 173 (same).  We hold only that the trial court properly granted summary judgment for Appellees on the ground that as a matter of law Texas's general condemnation statutes do not authorize the City's condemnation in district court of the Blue Mound Water and Wastewater System as a going concern to transfer ownership and operation of the utility to the City.

---

[12]Parallels exist between the legislation discussed in the *Texas Building Owners* case and some of the water code provisions.  *Compare* 110 S.W.3d at 527–30, *with* Tex. Water Code Ann. § 13.041.

[13]*Cf*. Tex. Water Code Ann. § 13.247(d) (West Supp. 2014) (authorizing the taking of an investor-owned utility located entirely within a municipality by said municipality if the municipality is larger than 500,000 people and if the utility service is substandard).

## V. CONCLUSION

Because as a matter of law the City is attempting to condemn Appellees' water and wastewater system as a going concern, because as a matter of law Appellees are entitled to compensation for going-concern value as an element of this purported taking, because the general Texas condemnation statutes provide no mechanism for the awarding of going-concern value as held in *Lone Star Gas Co.*, and because *Lone Star Gas Co.* remains binding precedent, we hold that Appellees conclusively established their entitlement to summary judgment on the ground that no statutory procedures exist authorizing the City's condemnation suit in this case in district court. Because we hold that this ground for summary judgment asserted by Appellees has merit, we need not address the City's other issues challenging the other possible grounds on which the trial court's summary judgment could have been based. *See* Tex. R. App. P. 47.1. We affirm the trial court's summary judgments for Appellees.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DELIVERED: November 13, 2014

29